# 26-30236

## IN THE UNITED STATES COURT OF APPEALS FOR THE FIFTH CIRCUIT

Megan Estay, individually and as a representative of a class of participants and beneficiaries on behalf of the Ochsner Clinic Foundation 401(K) Plan; Francesca Messore, individually and as a representative of a class of participants and beneficiaries on behalf of the Ochsner Clinic Foundation 401(K) Plan,

*Plaintiffs - Appellants,*

*v.*

Ochsner Clinic Foundation; Retirement Benefits Committee; Unidentified Parties,

*Defendants - Appellees.*

On Appeal from the United States District Court
for the Eastern District of Louisiana

Hon. Jane Triche Milazzo, No. 2:25-CV-507

## BRIEF OF APPELLANTS MEGAN ESTAY AND FRANCESCA MESSORE

Charles J. Stiegler
STIEGLER LAW FIRM, L.L.C.
318 Harrison Ave., Suite 104
New Orleans, LA 70124
(504) 267-0777
charles@stieglerlawfirm.com

Tulio Dock Chirinos
CHIRINOS LAW FIRM, P.L.L.C.
20283 State Road 7, Suite 592
Boca Raton, FL 33498
(561) 299-6334
tchirinos@chirinoslawfirm.com

***Counsel for Plaintiffs-Appellants***

# CERTIFICATE OF INTERESTED PERSONS

The undersigned counsel of record certifies that the following listed persons and entities as described in the fourth sentence of 5th CIR. R. 28.2.1 have an interest in the outcome of this case. These representations are made in order that the judges of this court may evaluate possible disqualification or recusal.

| **Appellees:** | **Counsel for Appellees:** |
|---|---|
| Ochsner Clinic Foundation | Stacey Cerrone of Jackson Lewis, P.C. New Orleans, LA |
| Ochsner Clinic Foundation | Rene' Thorne of Jackson Lewis, P.C. New Orleans, LA |
| Ochsner Clinic Foundation | Adam Carlisle of Jackson Lewis, P.C. New Orleans, LA |
| Retirement Benefits Committee | Stacey Cerrone of Jackson Lewis, P.C. New Orleans, LA |
| Retirement Benefits Committee | Rene' Thorne of Jackson Lewis, P.C. New Orleans, LA |
| Retirement Benefits Committee | Adam Carlisle of Jackson Lewis, P.C. New Orleans, LA |

| **Appellants:** | **Counsel for Appellants:** |
|---|---|
| Megan Estay | Charles Stiegler of Stiegler Law Firm, L.L.C. New Orleans, LA |
| Megan Estay | Tulio Chirinos of Chirinos Law Firm, P.L.L.C. Boca Raton, FL |
| Francesca Messore | Charles Stiegler of Stiegler Law Firm, L.L.C. New Orleans, LA |
| Francesca Messore | Tulio Chirinos of Chirinos Law Firm, P.L.L.C. Boca Raton, FL |

/s/*Charles J. Stiegler*
Charles J. Stiegler
Attorney of Record for Plaintiffs-Appellants

# STATEMENT REGARDING ORAL ARGUMENT

Pursuant to 5th CIR. R. 28.2.3, Plaintiffs-Appellants respectfully request oral argument. This appeal presents important and novel questions of ERISA fiduciary law that this Court has never addressed: whether 401(k) plan participants state claims for breach of the duties of loyalty and prudence where they allege that plan fiduciaries, vested with discretion to use forfeited plan assets either to defray administrative expenses charged to participants' retirement accounts or to reduce the sponsoring employer's own contribution obligations, invariably and without any deliberative process chose the option that benefited only the employer. More than fifty district court decisions nationwide have addressed variants of these questions with divergent reasoning, and appeals are pending in at least five other circuits.[1] Oral argument would materially assist the Court in resolving these consequential and recurring questions.

[1] The same issues are now before several other circuits. *See, e.g., Hutchins v. HP Inc.*, No. 25-826 (9th Cir.); *Cain v. Siemens Corp.*, No. 25-2564 (3d Cir.); *Polanco v. WPP Grp. USA, Inc.*, No. 26-1379 (2d Cir.); *Donelson v. Meijer, Inc.*, No. 26-1098 (6th Cir.); *Jacob v. RTX Corp.*, No. 26-1127 (4th Cir.).

# TABLE OF CONTENTS

**Contents** **Page(s)**

CERTIFICATE OF INTERESTED PERSONS....................ii

STATEMENT REGARDING ORAL ARGUMENT....................iii

TABLE OF CONTENTS....................iv

TABLE OF AUTHORITIES....................vii

INTRODUCTION....................1

JURISDICTIONAL STATEMENT....................2

STATEMENT OF THE ISSUES PRESENTED....................3

STATEMENT OF THE CASE....................4

I. Statutory Background....................4

II. Factual Background....................8

A. The Ochsner Plan....................8

B. The Committee's discretion over forfeitures, and its invariable choice to benefit Ochsner....................9

III. Procedural History....................13

SUMMARY OF THE ARGUMENT....................16

STANDARD OF REVIEW....................19

ARGUMENT....................20

I. Plaintiffs plausibly alleged that the Committee breached its duties of loyalty and prudence by reflexively using plan assets for Ochsner's exclusive benefit....................21

A. The Committee's members are fiduciaries with respect to the allocation of forfeitures....21

B. The Committee breached its duties of loyalty and prudence....22

1. The Committee breached the duty of loyalty by invariably choosing the one option that benefited only Ochsner....22

2. The Committee's utter lack of process breached the duty of prudence....26

C. The Committee's breaches caused losses to the Plan and its participants....30

II. The district court's dismissal rests on fundamental misunderstandings of ERISA's fiduciary duties....31

A. The district court treated the Committee's discretion as eliminating, rather than triggering, fiduciary duties....32

B. The district court's "promised benefits" rationale conflicts with the statute, with Supreme Court authority, and with this Court's decision in *Bussian*....34

1. The Plan expressly contemplated the participant-benefiting use of forfeitures, and participants were entitled to a loyal and prudent decision between the Plan's options....34

2. Bussian forecloses the district court's premise that plan-authorized conduct is immune from fiduciary review....36

3. ERISA's text and structure refute the "promised benefits" premise....37

C. The district court's "discretionary contributions" counterfactual cannot support dismissal....39

D. Plaintiffs pled a context-specific claim, not a categorical rule—and the permissibility of the offset under tax guidance does not answer the fiduciary question....42

E. The district court never analyzed the prudence claim as a process claim....45

III. Because the fiduciary-breach claims should be reinstated, so should the derivative failure-to-monitor claim........................................47

CONCLUSION........................................................................................... 47

CERTIFICATE OF SERVICE..........................................................................48

CERTIFICATE OF COMPLIANCE....................................................................49

# TABLE OF AUTHORITIES

**Cases** **Page(s)**

*Allen v. GreatBanc Tr. Co.*,
835 F.3d 670 (7th Cir. 2016)............19, 29, 46

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)............19

*Bannistor v. Ullman*,
287 F.3d 394 (5th Cir. 2002)............22

*Becerra v. Bank of Am. Corp.*,
No. 3:24cv-921, 2025 U.S. Dist. LEXIS 157154 (W.D.N.C. Aug. 12, 2025)
............32

*Beck v. PACE Int'l Union*,
551 U.S. 96 (2007)............44

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007)............19

*Braden v. Wal-Mart Stores, Inc.*,
588 F.3d 585 (8th Cir. 2009)............19, 26, 29, 46

*Brown v. Peco Foods, Inc.*,
812 F. Supp. 3d 664 (S.D. Miss. 2025)............15

*Buescher v. N. Am. Lighting, Inc.*,
791 F. Supp. 3d 873 (C.D. Ill. 2025)............32

*Bussian v. RJR Nabisco, Inc.*,
223 F.3d 286 (5th Cir. 2000)............passim

*Chavez v. Plan Ben. Servs.*,
77 F.4th 370 (5th Cir. 2023), amended at 108 F.4th 297 (5th Cir. 2024).....39

*Cigna Corp. v. Amara*,
563 U.S. 421 (2011)............38

*Cline v. Indus. Maint. Eng'g & Contracting Co.*,
200 F.3d 1223 (9th Cir. 2000)....................................................................6

*Cunningham v. Cornell Univ.*,
604 U.S. 693 (2025)............................................................................5, 25

*Donovan v. Bierwirth*,
680 F.2d 263 (2d Cir. 1982)..............................................................7, 21, 23

*Donovan v. Cunningham*,
716 F.2d 1455 (5th Cir. 1983)....................................................................27

*Fifth Third Bancorp v. Dudenhoeffer*,
573 U.S. 409 (2014)..................................................................17, 19, 33, 43

*Gardner-Keegan v. W.W. Grainger, Inc.*,
No. 1:25-cv-5233, 2026 U.S. Dist. LEXIS 13772 (N.D. Ill. Jan. 26, 2026)
..........................................................................................................passim

*Graden v. Conexant Sys., Inc.*,
496 F.3d 291 (3d Cir. 2007)............................................................18, 34, 37

*Heet v. Nat'l Med. Care, Inc.*,
819 F. Supp. 3d 63 (D. Mass. 2026)................................................23, 32, 35

*Hi-Lex Controls, Inc. v. Blue Cross Blue Shield*,
751 F.3d 740 (6th Cir. 2014).......................................................................6

*Hughes v. Nw. Univ.*,
595 U.S. 170 (2022)....................................................................................39

*Hutchins v. HP Inc.*,
737 F. Supp. 3d 851 (N.D. Cal. 2024).......................................13, 35, 43, 45

*In re Halpin*,
566 F.3d 286 (2d Cir. 2009).........................................................................6

*In re UnitedHealth ERISA 401(k) Litig.*,
No. 25-cv-1751, 2026 U.S. Dist. LEXIS 137236 (D. Minn. June 22, 2026)
..........................................................................................................passim

*John Hancock Mut. Life Ins. Co. v. Harris Tr. & Sav. Bank*,
510 U.S. 86 (1993)......................................................................................22

*Leigh v. Engle*,
727 F.2d 113 (7th Cir. 1984)....................................................................23, 24

*Lormand v. US Unwired, Inc.*,
565 F.3d 228 (5th Cir. 2009)..............................................................19, 31, 41

*Mass. Mut. Life Ins. Co. v. Russell*,
473 U.S. 134 (1985)...............................................................................................37

*Matousek v. MidAmerican Energy Co.*,
51 F.4th 274 (8th Cir. 2022)...............................................................................26

*Matula v. Wells Fargo & Co.*,
175 F.4th 958 (8th Cir. 2026)............................................................................30

*McManus v. Clorox Co.*,
No. 4:23-cv-05325, 2025 U.S. Dist. LEXIS 43765 (N.D. Cal. Mar. 3, 2025)
.............................................................................................................................32

*Metzler v. Graham*,
112 F.3d 207 (5th Cir. 1997)....................................................................23, 26

*Milofsky v. Am. Airlines, Inc.*,
442 F.3d 311 (5th Cir. 2006) (en banc)..........................................................38

*Pegram v. Herdrich*,
530 U.S. 211 (2000)...............................................................................................40

*Perez-Cruet v. Qualcomm Inc.*,
No. 23-cv-1890, 2024 U.S. Dist. LEXIS 93522 (S.D. Cal. May 24, 2024)..32

*Perkins v. United Surgical Partners Int'l, Inc.*,
2024 U.S. App. LEXIS 8804 (5th Cir. Apr. 11, 2024)............................39, 47

*Rodriguez v. Intuit Inc.*,
744 F. Supp. 3d 935 (N.D. Cal. 2024)..........................................................32

*Sacerdote v. N.Y.U.*,
9 F.4th 95 (2d Cir. 2021)..............................................................20, 29, 40, 42

*Schweitzer v. Inv. Comm. of Phillips 66 Sav. Plan*,
960 F.3d 190 (5th Cir. 2020)....................................................................21, 26

*Seidner v. Kimberly-Clark Corp.*,
No. 3:21-cv-867-L, 2023 U.S. Dist. LEXIS 54780 (N.D. Tex. Mar. 30, 2023)....29

*Stewart v. NextEra Energy, Inc.*,
No. 23-81314, 2025 U.S. Dist. LEXIS 219292 (S.D. Fla. Aug. 14, 2025)...32

*Swenson v. United of Omaha Life Ins. Co.*,
876 F.3d 809 (5th Cir. 2017)....38

*Tibble v. Edison Int'l*,
575 U.S. 523 (2015)....5, 39

*Tillery v. WakeMed Health & Hosps.*,
819 F. Supp. 3d 442 (E.D.N.C. 2026)....14

*Tussey v. ABB, Inc.*,
746 F.3d 327 (8th Cir. 2014)....39

*Varity Corp. v. Howe*,
516 U.S. 489 (1996)....passim

**Statutes**

28 U.S.C. § 1291....2

28 U.S.C. § 1331....2

29 U.S.C. § 1001....5, 7

29 U.S.C. § 1002....passim

29 U.S.C. § 1053....6

29 U.S.C. § 1102....7

29 U.S.C. § 1103....6, 8, 22

29 U.S.C. § 1104....passim

29 U.S.C. § 1106....15

29 U.S.C. § 1109....13

29 U.S.C. § 1132 .......... passim

29 U.S.C. § 1135 .......... 44

**Rules and Regulations**

Fed. R. App. P. 4(a)(1)(A) .......... 2

Fed. R. Civ. P. 12(b)(6) .......... passim

26 C.F.R. § 1.401-7(a) .......... 44

**Other Authorities**

Brief of the U.S. Secretary of Labor as Amicus Curiae, Wright v. JPMorgan Chase & Co., No. 25-4235 (9th Cir.) .......... 45

DOL Field Assistance Bulletin 2008-01 .......... 41

James A. Wooten, The Employee Retirement Income Security Act of 1974: A Political History (2004) .......... 4

Reorganization Plan No. 4 of 1978, § 1, 5 U.S.C. app. 1 .......... 44

Use of Forfeitures in Qualified Retirement Plans, 88 Fed. Reg. 12,282 (proposed Feb. 27, 2023) .......... 43

# INTRODUCTION

The Ochsner Clinic Foundation 401(k) Plan (the "Plan") gave its fiduciaries a choice about how to use forfeited plan assets. One option—written expressly into the Plan—was to pay the administrative expenses otherwise deducted from participants' retirement accounts, leaving more of the participants' money invested and growing for retirement. The other was to relieve Ochsner, the Plan's sponsor, of contribution obligations it had already declared and could easily afford. ERISA has a rule for fiduciaries who hold that kind of discretion over plan assets: they must exercise it "solely in the interest of the participants and beneficiaries," 29 U.S.C. § 1104(a)(1), through a reasoned, impartial decision-making process. Under ERISA, discretion is a duty, not a defense.

Plaintiffs allege that for six straight years, the Plan's fiduciaries exercised that discretion the same way every time. More than $14.3 million in forfeited plan assets went to reduce Ochsner's contributions. Not one dollar went to participants' expenses. And participants' accounts were charged more than $11.5 million that forfeitures could have defrayed. ROA.901–02 (Am. Compl. ¶¶ 117–18). The only decision-making "process" the record reflects is that the Plan fiduciaries coordinated with Ochsner and the Plan's recordkeeper to calculate the maximum offset Ochsner could take. ROA.896 (Am. Compl. ¶¶ 93–95).

The district court dismissed at the pleading stage. It did not find that these allegations were implausible on their own terms. Instead, the district court held that a fiduciary "does not breach its duty of loyalty by discretionarily choosing to apply forfeitures to employer contributions rather than to pay administrative costs." ROA.1783–84 (Op. 7–8). That holding converts the very discretion that defines an ERISA fiduciary into a shield from fiduciary liability. Under this theory, the more discretion a plan confers, the less duty a fiduciary owes to participants. The opinion below therefore directly inverts one of the core principles of ERISA, and this Court should reverse.

## JURISDICTIONAL STATEMENT

The district court had subject-matter jurisdiction under 29 U.S.C. § 1132(e)(1) and 28 U.S.C. § 1331 because Plaintiffs assert claims arising under ERISA, 29 U.S.C. § 1132(a)(2). On March 24, 2026, the district court entered its Order and Reasons granting Defendants' motion to dismiss and dismissing Plaintiffs' claims with prejudice. ROA.1777–90 (Op.). The court entered final judgment on March 25, 2026. ROA.1791. Plaintiffs timely filed a notice of appeal on April 22, 2026, within thirty days of the entry of judgment. ROA.1792–93; Fed. R. App. P. 4(a)(1)(A). This Court has jurisdiction under 28 U.S.C. § 1291 because the appeal is taken from a final judgment disposing of all claims.

## STATEMENT OF THE ISSUES PRESENTED

1. Whether Plaintiffs state a plausible claim that the fiduciary Committee breached ERISA's duty of loyalty, where they allege that the fiduciary Committee had discretion to use forfeited plan assets (forfeitures) to either (1) save Ochsner money *or* (2) save participants money, yet consistently chose the former over the latter even though doing so *only* benefited Ochsner.

2. Whether Plaintiffs state a plausible claim that the fiduciary Committee breached ERISA's duty of prudence by conducting no meaningful decision-making process to determine which use of forfeitures was in the best interest of the Plan and its participants, but instead coordinating with Ochsner and the recordkeeper to benefit the Plan sponsor, ultimately not using *any* forfeitures to benefit Plan participants.

3. Whether Plaintiffs state a plausible claim that Ochsner, which appointed and had the authority to remove the members of the fiduciary Committee, breached ERISA's fiduciary duty of prudence for failing to monitor the Committee, where Plaintiffs state plausible claims against the Committee for breaching its duties of prudence and loyalty.

# STATEMENT OF THE CASE

This is a putative ERISA class action brought by two participants in the Ochsner Clinic Foundation 401(k) Plan ("the Plan"), a defined-contribution retirement plan sponsored by Ochsner Clinic Foundation ("Ochsner"). Plaintiffs allege that the Plan's administrator, the Retirement Benefits Committee ("the Committee"), breached ERISA's fiduciary standards by consistently and reflexively exercising its discretion to apply forfeited Plan assets to offset Ochsner's employer contributions rather than pay the Plan's administrative expenses. Plaintiffs also allege that Ochsner failed adequately to monitor the Committee. The district court (Hon. Jane Triche Milazzo) dismissed Plaintiffs' claims under Rule 12(b)(6): first with leave to amend, *Estay v. Ochsner Clinic Found.*, No. 25-cv-507, 2025 U.S. Dist. LEXIS 179822 (E.D. La. Sept. 15, 2025); ROA.850–68, and then, as to the First Amended Complaint, with prejudice, *Estay v. Ochsner Clinic Found.*, No. 25-cv-507, 2026 U.S. Dist. LEXIS 61513 (E.D. La. Mar. 24, 2026); ROA.1777–90.

## I. Statutory Background

ERISA "was Congress's attempt to devise a comprehensive regulatory program to protect millions of American workers who looked to private pension plans for financial support in their retirement years." James A. Wooten, *The Employee Retirement Income Security Act of 1974: A Political History 1* (2004). ERISA's introductory provision explains that ERISA establishes "safeguards"

regarding "the establishment, operation, and administration of" employee benefit plans, due to the "millions of employees and their dependents [who] are directly affected by these plans." *See* 29 U.S.C. § 1001(a). To that end, ERISA regulates all employer-sponsored retirement plans (referred to as "employee pension benefit plan[s]"), which it divides into two broad categories: "defined benefit" and "defined contribution" plans. 29 U.S.C. § 1002(34)–(35).

A defined contribution plan (sometimes referred to as an "individual account plan") "provides for an individual account for each participant." 29 U.S.C. § 1002(34). Benefits are "based solely upon the amount contributed to the participant's account, and any income, expenses, gains and losses, and any forfeitures of accounts of other participants which may be allocated to such participant's account." *Id.*; *see also Cunningham v. Cornell Univ.*, 604 U.S. 693, 697–98 (2025) (explaining that defined contribution participants "maintain individual investment accounts within those plans, the value of which is determined by the market performance of employee and employer contributions, less expenses. Those expenses include fees paid to service providers."). "Expenses, such as management or administrative fees, can sometimes significantly reduce the value of an account in a defined-contribution plan." *Tibble v. Edison Int'l*, 575 U.S. 523, 525 (2015).

Contributions to a participant's defined contribution plan account are typically made by both the participant and the plan's sponsor (the participant's employer).

While participants are always fully vested in their own contributions, 29 U.S.C. § 1053(a)(1), plans may subject employer contributions to a vesting schedule, 29 U.S.C. § 1053(a)(2)(B). This means that participants may be required to remain employed for a certain number of years in order to be fully vested in the amounts contributed by their employer.

But even when participants leave employment before fully vesting in employer contributions, those contributions—though "forfeited" by the departing employee—remain assets of the plan. That is because *all* contributions to a defined contribution plan, including employer contributions, become plan assets immediately upon being paid into the plan. *Hi-Lex Controls, Inc. v. Blue Cross Blue Shield,* 751 F.3d 740, 745–47 (6th Cir. 2014); *Cline v. Indus. Maint. Eng'g & Contracting Co.*, 200 F.3d 1223, 1230 (9th Cir. 2000); *see also In re Halpin*, 566 F.3d 286, 290 (2d Cir. 2009) ("employer contributions become [plan] assets only after being paid"). ERISA forbids employer contributions from reverting to the employer, except in limited situations not relevant here. *See* 29 U.S.C. § 1103(c)(2). Rather, ERISA requires that "all assets of an employee benefit plan shall be held in trust." 29 U.S.C. § 1103(a). Plan assets "shall never inure to the benefit of any employer and shall be held for the exclusive purposes of providing benefits to participants in the plan and their beneficiaries and defraying reasonable expenses of administering the plan." 29 U.S.C. § 1103(c)(1).

ERISA requires every plan to have at least one named fiduciary endowed with authority to administer the plan, 29 U.S.C. § 1102(a). The Act defines fiduciary to include anyone who "has any discretionary authority or discretionary responsibility" in plan administration, 29 U.S.C. § 1002(21)(A)(iii). It further extends fiduciary status to anyone—even if not named as such in the plan—who, in practice, "exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets." 29 U.S.C. § 1002(21)(A)(i). And it subjects all fiduciaries to "standards of conduct, responsibility, and obligation." 29 U.S.C. § 1001(b).

This Court has described "ERISA's duty of loyalty [as] the highest known to the law." *Bussian v. RJR Nabisco, Inc.*, 223 F.3d 286, 294 (5th Cir. 2000) (quoting *Donovan v. Bierwirth*, 680 F.2d 263, 272 n.8 (2d Cir. 1982)). The duty of loyalty requires that fiduciaries discharge their duties "solely in the interest of the [plan's] participants and beneficiaries" and for the "exclusive purpose" of "providing benefits to participants" and "defraying reasonable expenses of administering the plan." 29 U.S.C. § 1104(a)(1)(A). ERISA's duty of prudence requires that fiduciaries act "with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims." 29

U.S.C. § 1104(a)(1)(B). The duty of prudence "overlaps the duty of loyalty," and the "presence of conflicting interests imposes on fiduciaries the obligation to take precautions to ensure that their duty of loyalty is not compromised." *Bussian*, 223 F.3d at 299. When such a conflict exists, this Court instructs that fiduciaries must ensure their "actions are in the best interest of plan participants and beneficiaries" by "at a minimum undertak[ing] an intensive and scrupulous independent investigation of the fiduciary's options." *Id.* (cleaned up).

## II. Factual Background

### A. The Ochsner Plan

The Plan is a defined contribution plan with more than 20,000 participants. ROA.886, 910 (Am. Compl. ¶¶ 45, 163). Ochsner is the Plan's sponsor, and the Committee is the Plan's administrator; both are named fiduciaries of the Plan. ROA.878–79 (Am. Compl. ¶¶ 20–22). The Plan's assets are held in a trust fund. ROA.886 (Am. Compl. ¶ 47); 29 U.S.C. § 1103(a). The Plan's "Exclusive Benefit" provision states that the Plan was "established and shall be maintained for the exclusive benefit of the Participants and their Beneficiaries . . . [and] no part of the Trust shall revert to any Participating Employer, or be used for, or diverted to, purposes other than the exclusive benefit of the Participants and their Beneficiaries." ROA.887 (Am. Compl. ¶ 51).

The Plan is funded by participants' wage deferrals and by Ochsner's Employer Contributions, including matching contributions. ROA.887 (Am. Compl. ¶ 52). Participants are immediately vested in their own contributions but vest in Employer Contributions over a six-year schedule. ROA.888 (Am. Compl. ¶ 56). Participants who leave Ochsner before six years forfeit a proportional amount of Employer Contributions and earnings (the "Forfeited Plan Assets" or "forfeitures"), which remain assets of the Plan. ROA.887–88 (Am. Compl. ¶¶ 55, 57).

Like all large 401(k) plans, the Plan incurs administrative expenses—recordkeeping, audits, governmental filings, and the like. The Plan provides that these expenses "may be paid directly by the Participating Employer or, at the election of the Participating Employer, . . . may be paid from the assets of the Trust Fund." ROA.888 (Am. Compl. ¶ 58). Throughout the Class Period (2019 through date of judgment), those expenses were charged to participants' individual accounts. ROA.877–78, 901 (Am. Compl. ¶¶ 14–15, 115).

### B. The Committee's discretion over forfeitures, and its invariable choice to benefit Ochsner

The Plan explicitly provided the Committee with discretionary authority to manage and dispose of Forfeited Plan Assets in one of two ways: "forfeitures shall be used to reduce Participating Employer's obligations to make Matching Contributions and/or Basic Contributions and/or Retirement Contributions and/or

Supplemental Retirement Contributions **and/or to pay administrative expenses of the Plan**." ROA.888 (Am. Compl. ¶ 59) (emphasis added). Using forfeitures to pay administrative expenses directly benefits participants: it reduces the expenses deducted from their individual accounts and leaves more money invested and growing for retirement. ROA.893, 904 (Am. Compl. ¶¶ 83, 128). Using forfeitures to reduce Ochsner's contribution obligations benefits only Ochsner: it allows the company to satisfy contributions it has already declared with Plan assets rather than corporate cash. ROA.900, 903–04 (Am. Compl. ¶¶ 109, 127–29).

The Committee *never* chose the option that benefited participants. Throughout the Class Period, the Committee used every dollar of allocated forfeitures to reduce Ochsner's contributions, and allocated nothing—$0—to administrative expenses. Meanwhile, the Committee charged participant accounts millions of dollars to defray expenses each year. ROA.901–02 (Am. Compl. ¶¶ 117–18). The Amended Complaint summarizes the Plan's Forms 5500 data for Plan year 2019 through 2024, which Ochsner filed with the Department of Labor and are publicly available:

| Plan Year | Forfeitures Used to Reduce Ochsner's Contributions | Forfeitures Used to Pay Administrative Expenses | Administrative Expenses Charged to Participants' Accounts |
|---|---|---|---|
| 2019 | $1,843,926 | $0 | $1,167,313 |
| 2020 | $1,597,179 | $0 | $1,315,673 |
| 2021 | $2,400,764 | $0 | $1,658,137 |
| 2022 | $2,595,597 | $0 | $1,966,821 |
| 2023 | $3,120,050 | $0 | $2,445,653 |
| 2024 | $2,765,083 | $0 | $2,994,493 |
| **Total** | **$14,322,599** | **$0** | **$11,548,090** |

ROA.902 (Am. Compl. ¶ 118). In six years, not one forfeited dollar went to defray any of the administrative expenses, which were therefore charged entirely to participants' accounts.

There was never any participant-protective reason for this one-sided pattern. Ochsner declared Employer Contributions of approximately $244 million from 2019 through 2023: $37.8 million (2019), $38.2 million (2020), $48.8 million (2021), $57.4 million (2022), and $61.7 million (2023). ROA.900 (Am. Compl. ¶ 112). Importantly, each of these annual contributions was declared *before* the challenged forfeiture allocation decisions were made. ROA.897–99 (Am. Compl. ¶¶ 99–103). In each year, the forfeiture offsets in those years amounted to less than five percent

of the declared contributions. ROA.898 (Am. Compl. ¶ 101). Ochsner remained financially sound throughout the Class Period, with over $500 million in operating gains and ample cash on hand, and there was no risk it would default on any declared contribution. ROA.1437–38; ROA.897, 903 (Am. Compl. ¶¶ 96–97, 125).

Nor did the Committee's invariable choice result from a reasoned decision-making process. The only "process" alleged, and the only process the Form 5500 data and trust reports reflect, is that the Committee coordinated with Ochsner and the Plan's recordkeeper to calculate the maximum amount by which Forfeited Plan Assets could reduce Ochsner's declared contributions. ROA.896, 897 (Am. Compl. ¶¶ 93–96). Accepting the allegations of the First Amended Complaint, the Committee did not: (1) weigh the advantages and disadvantages of the two uses the Plan authorized; (2) investigate whether Ochsner faced any risk of default that might justify relieving it of a funding obligation; (3) consider dividing forfeitures between the two permitted uses; or (4) seek the advice of any independent, non-conflicted fiduciary or advisor, despite its obvious structural conflict in deciding whether Plan assets would be used to benefit participants or the Plan's sponsor. ROA.896–97, 899–900, 914 (Am. Compl. ¶¶ 93–97, 104–110, 179).

Plaintiffs expressly disclaimed any *per se* theory. The Amended Complaint acknowledges that using forfeitures to reduce employer contributions could be loyal and prudent in some circumstances—for example, where the employer's financial

distress puts future contributions at risk. ROA.904 (Am. Compl. ¶ 130). No such circumstances existed here. Just as importantly, the Committee never even looked. ROA.897, 904 (Am. Compl. ¶¶ 96–97, 130).

### III. Procedural History

Plaintiffs Megan Estay and Francesca Messore, participants in the Plan, filed this putative class action on March 14, 2025, on behalf of themselves, the Plan, and similarly situated participants and beneficiaries, under 29 U.S.C. § 1132(a)(2) and § 1109(a). ROA.9–32. The complaint asserted claims for breach of the duties of loyalty and prudence, prohibited transactions, and failure to monitor.

Defendants moved to dismiss. On September 15, 2025, the district court granted the motion but gave Plaintiffs leave to amend. ROA.850–68 (First Op.). Relying on out-of-circuit district court decisions led by *Hutchins v. HP Inc.*, 737 F. Supp. 3d 851 (N.D. Cal. 2024), the court reasoned that (1) ERISA requires only that participants receive their "promised benefits"; (2) ERISA and the Plan authorize using forfeitures for employer contributions; and (3) Plaintiffs' theory would effectively mandate that forfeitures be used for expenses and would create a benefit "not contemplated" by the Plan. ROA.856–57, 861 (First Op. 7–8, 12). The court rejected Defendants' alternative argument that Plaintiffs' claims were disguised benefits claims requiring administrative exhaustion. ROA.866–68 (First Op. 17–19).

Plaintiffs filed their First Amended Complaint on October 21, 2025, adding more than eighty detailed paragraphs describing Ochsner's declared contributions and financial strength; the absence of any default risk; the Committee's lack of any deliberative process; and the conflicted and one-sided character of the allocation decisions. ROA.874–921 (Am. Compl.). Plaintiffs also submitted updated Form 5500 data showing that, for Plan year 2024, the Committee again failed to allocate any forfeitures to Plan administrative expenses. ROA.902 (Am. Compl. ¶ 118). Defendants again moved to dismiss. ROA.922.

On March 24, 2026, the district court dismissed all claims with prejudice. ROA.1777–90 (Op.). As to the duty of loyalty, the court reasoned that because Ochsner's matching contributions are "discretionary," the Committee "could have used the [F]orfeitures to pay for administrative expenses and opted not to make contributions," and "[i]n view of this discretion, . . . a fiduciary does not breach its duty of loyalty by discretionarily choosing to apply forfeitures to employer contributions rather than to pay administrative costs." ROA.1783–84 (Op. 7–8) (quoting *Tillery v. WakeMed Health & Hosps.*, 819 F. Supp. 3d 442 (E.D.N.C. 2026), and *Gardner-Keegan v. W.W. Grainger, Inc.*, No. 1:25-cv-5233, 2026 U.S. Dist. LEXIS 13772 (N.D. Ill. Jan. 26, 2026)). Repeating its earlier holding, the court stated that "the fiduciary duty is fulfilled where the fiduciary ensures that participants have received their promised benefits." ROA.1783–84 (Op. 7–8).

On the duty of prudence, the court acknowledged that a prudence claim survives dismissal where "the court, based on circumstantial factual allegations, may reasonably infer from what is alleged that the process was flawed," ROA.1785 (Op. 9) (quoting *Brown v. Peco Foods, Inc.*, 812 F. Supp. 3d 664 (S.D. Miss. 2025)), but held that "at bottom Plaintiffs still contend that an inference of imprudence is created when a fiduciary chooses to apply forfeitures to discretionary employer matching contributions over administrative fees," and that "giving credence to such an inference would create a categorical rule that fiduciaries are always assumed to act imprudently" when they make that choice. ROA.1786 (Op. 10). The court did not address Plaintiffs' allegations that the Committee lacked any deliberative process at all.[2] *Cf.* ROA.914. It dismissed the monitoring claim as derivative, ROA.1789 (Op. 13), and, having previously granted leave to amend, dismissed all claims with prejudice. ROA.1790 (Op. 14). The court entered final judgment on March 25, 2026, ROA.1791, and Plaintiffs timely appealed, ROA.1792.[3]

[2] Plaintiffs also claimed that the Committee acted imprudently by failing to timely allocate forfeitures, allowing millions of dollars in forfeited plan assets to sit unallocated at year end. *E.g.*, ROA.901 (Am. Compl. ¶ 116). The district court dismissed that theory, and Plaintiffs do not challenge that ruling on appeal.

[3] Plaintiffs also alleged that Defendants engaged in transactions prohibited by 29 U.S.C. § 1106(a)(1) and (b) (ROA.906–10 (Am. Compl. ¶¶ 137–160 (Counts III & IV))), and the district court dismissed those claims. Plaintiffs do not appeal the dismissal of the prohibited-transaction claims.

# SUMMARY OF THE ARGUMENT

This case presents a straightforward application of ERISA's core fiduciary principles that this Court has time and again articulated. When plan fiduciaries hold discretion over the disposition of plan assets, ERISA requires them to exercise that discretion prudently and solely in the interest of participants and beneficiaries. Plaintiffs plausibly alleged that the Committee did neither. The Plan gave the Committee a choice between two authorized uses of forfeited plan assets: pay the administrative expenses otherwise charged to participants' retirement accounts, or reduce Ochsner's own declared contribution obligations. For six straight years, the Committee chose Ochsner every time, with every dollar, even as participants' accounts were charged more than $11.5 million in expenses that the forfeitures could have fully defrayed. The Committee made those invariable choices without any deliberative process—and for no apparent good, participant-centered reason: the only "process" alleged is the Committee's coordination with Ochsner and the recordkeeper to calculate the maximum offset Ochsner could take. Those allegations easily state claims for breach of the duties of loyalty and prudence under Rule 12(b)(6).

The district court dismissed these claims based on a series of legal errors that misapprehend ERISA's fiduciary framework. Most fundamentally, the court erred in treating the Committee's discretion as a shield. Because the Plan left the allocation

decision to the Committee's discretion, the court reasoned, no exercise of that discretion could breach a fiduciary duty. That gets ERISA exactly backwards. Discretion over plan assets is what makes a person a fiduciary in the first place, 29 U.S.C. § 1002(21)(A), and "the primary function of the fiduciary duty is to constrain the exercise of discretionary powers." *Varity Corp. v. Howe*, 516 U.S. 489, 504 (1996). Discretion *triggers* fiduciary obligations; it does not eliminate them. Furthermore, as the Supreme Court has made clear, "the duty of prudence trumps the instructions of a plan document[.]" *Fifth Third Bancorp v. Dudenhoeffer*, 573 U.S. 409, 421 (2014).

The district court also held that "the fiduciary duty is fulfilled where the fiduciary ensures that participants have received their promised benefits." This assertion is irreconcilable with this Court's decision in *Bussian*. This Court held that "simply because ERISA allows" a course of conduct "does not mean that a fiduciary's acts undertaken to implement" it "may deviate from ERISA's command that a 'fiduciary shall discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries.'" *Bussian*, 223 F.3d at 296. The Ochsner Plan, moreover, did not "promise nothing" about forfeitures: it expressly contemplated that forfeitures could pay administrative expenses, a use that directly increases participants' account balances. Participants are entitled "not only to what *is* in their accounts, but also to what *should* be there" absent fiduciary impropriety. *Graden v.*

*Conexant Sys., Inc.*, 496 F.3d 291, 297 (3d Cir. 2007). In this case, that means participants were entitled to a fiduciary who made a considered, loyal, and prudent decision between the two options set forth in the Plan.

The stakes, moreover, extend well beyond this Plan. Under the rule set forth below, the more discretion a plan confers on a fiduciary, the less care the fiduciary owes to the participants—and the plans most in need of ERISA's protections would receive the least of them. ERISA does not sanction that inversion.

The court's remaining rationales fare no better. It observed that Ochsner's contributions were "discretionary," so the Committee "could have" paid expenses with forfeitures and Ochsner could have "opted not to make contributions." ROA.1783. In addition to conflating Ochsner and the Committee, this claim rests on a counterfactual that contradicts the Amended Complaint, which alleges that Ochsner declared its contributions *before* the allocation decisions were made and would have paid them in full regardless. On a motion to dismiss, that well-pleaded allegation controls. The court's concern about creating a "categorical rule" ignores that Plaintiffs expressly disclaimed any *per se* theory and pled a context-specific claim: no default risk, a financially flush sponsor, a structural conflict of interest, no process, and a six-year unbroken pattern of self-dealing allocations. And the court did not engage with the prudence claim on its own terms, as a *process* claim, but instead recycled its loyalty analysis. That failure independently requires reversal.

Because Plaintiffs plausibly alleged breaches of the duties of loyalty and prudence, the derivative failure-to-monitor claim should also be reinstated. This Court should reverse and remand.

## STANDARD OF REVIEW

This Court reviews *de novo* a district court's dismissal for failure to state a claim under Rule 12(b)(6). *Lormand v. US Unwired, Inc.*, 565 F.3d 228, 232 (5th Cir. 2009). To survive a motion to dismiss, a complaint need only "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible when the pleaded facts allow the court "to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The court must "accept all factual allegations in the complaint as true" and draw all reasonable inferences in the plaintiff's favor. *Lormand*, 565 F.3d at 232–33. While the plausibility inquiry in ERISA cases is "context specific," *Dudenhoeffer*, 573 U.S. at 425, an ERISA plaintiff "does not need to plead details to which she has no access, as long as the facts alleged tell a plausible story," *Allen v. GreatBanc Tr. Co.*, 835 F.3d 670, 678 (7th Cir. 2016); *accord Braden v. Wal-Mart Stores, Inc.*, 588 F.3d 585, 598 (8th Cir. 2009). And, because "ERISA plaintiffs generally lack the inside information necessary to make out their claims in detail unless and until discovery commences[,]" it follows that "a claim under ERISA may withstand a motion to

dismiss based on sufficient circumstantial factual allegations to support the claim, even if it lacks direct allegations of misconduct." *Sacerdote v. N.Y.U.*, 9 F.4th 95, 107 (2d Cir. 2021).

# ARGUMENT

When an ERISA plan gives an entity discretion over plan assets, the entity must exercise its discretion in accordance with ERISA's strict duties of loyalty and prudence. The district court did not question that the Committee held and exercised fiduciary discretion. ROA.1778 (Op. 2) ("According to the Plan, Defendants, as the Plan's fiduciaries, have discretion to use the Forfeitures to either pay administrative expenses of the Plan or reduce future employer matching contributions."). But it then paradoxically used that same discretion to immunize the Committee from liability, holding that a fiduciary "does not breach its duty of loyalty by discretionarily choosing to apply forfeitures to employer contributions rather than to pay administrative costs." ROA.1783–84 (Op. 7–8). That conclusion turns ERISA on its head. Discretion is what makes someone a fiduciary and triggers fiduciary duties; it does not allow fiduciaries to act with impunity.

Had the district court properly understood the significance of the Committee's discretion, it would have recognized that Plaintiffs stated claims for breach of the duties of loyalty and prudence. Loyalty requires that fiduciaries' decisions "be made with an eye single to the interests of the participants and beneficiaries," *Bussian*, 223

F.3d at 296, 299 (quoting *Bierwirth*, 680 F.2d at 271), and prudence requires a reasoned decision-making process. The alleged facts show that the Committee instead reflexively applied forfeitures to save Ochsner money, year after year, without any consideration of participants' interests. Point I below sets out the *prima facie* case. Point II addresses the legal errors that led the district court astray. Point III addresses the derivative monitoring claim.

## I. Plaintiffs plausibly alleged that the Committee breached its duties of loyalty and prudence by reflexively using plan assets for Ochsner's exclusive benefit.

To state a claim for breach of fiduciary duty under ERISA, "a plaintiff must plausibly allege that a fiduciary breached one of [ERISA's fiduciary] duties, causing a loss to the employee benefit plan." *Schweitzer v. Inv. Comm. of Phillips 66 Sav. Plan*, 960 F.3d 190, 194–95 (5th Cir. 2020). The Amended Complaint plausibly alleges each element.

### A. The Committee's members are fiduciaries with respect to the allocation of forfeitures.

There is no dispute that the Committee acted as fiduciaries when allocating the Plan's forfeitures. Ochsner and the Committee are named fiduciaries of the Plan. ROA.878 (Am. Compl. ¶ 22). And under ERISA's functional test, a person is a fiduciary "to the extent" he "exercises any authority or control respecting management or disposition of [plan] assets." 29 U.S.C. § 1002(21)(A); *see*

*Bannistor v. Ullman*, 287 F.3d 394, 401–03 (5th Cir. 2002) (control over disposition of plan assets confers fiduciary status). Forfeitures are indisputably plan assets: they are unvested employer contributions that were deposited into the Plan's trust. ROA.887–88 (Am. Compl. ¶¶ 55, 57); 29 U.S.C. § 1103(a), (c). A fiduciary's "actions in regard to [the] management and disposition [of plan assets] must be judged against ERISA's fiduciary standards." *John Hancock Mut. Life Ins. Co. v. Harris Tr. & Sav. Bank*, 510 U.S. 86, 106 (1993). Defendants never contested that the forfeiture allocation decision was fiduciary conduct, and explicitly acknowledged that "the Plan grants Defendants discretion to allocate these forfeitures." ROA.933. The district court therefore correctly analyzed the allocation decisions as fiduciary conduct. ROA.1778, 1780–81 (Op. 2, 4–5).

### B. The Committee breached its duties of loyalty and prudence.

#### *1. The Committee breached the duty of loyalty by invariably choosing the one option that benefited only Ochsner.*

ERISA's duty of loyalty requires a fiduciary to discharge its duties "**<u>solely</u>** in the interest of the participants and beneficiaries" and "for the exclusive purpose of: (i) providing benefits to participants and their beneficiaries; *and* (ii) defraying reasonable expenses of administering the plan." 29 U.S.C. § 1104(a)(1)(A) (emphasis added). In this Circuit, fiduciaries facing a decision in which the employer's interests are implicated "act consistently with ERISA's obligations if 'their decisions [are] made with an eye single to the interests of the participants and

beneficiaries.'" *Bussian*, 223 F.3d at 298 (quoting *Bierwirth*, 680 F.2d at 271). A fiduciary acts disloyally when it prioritizes its own interests—or its corporate parent's—over those of the plan and its participants. *See id.*; *Metzler v. Graham*, 112 F.3d 207, 213 (5th Cir. 1997) (asking whether the fiduciary "ever placed his interests over the plan's interest or ever failed to keep 'an eye single to the interests of the participants and beneficiaries'").

The Committee did not act with an eye single to participants' interests. The allocation choice the Plan gave them was zero-sum: "using chargeable forfeited matching contributions to defray other contributions due from the company obviously benefits the company, while administrative expense defrayment benefits the plan participants." *Heet v. Nat'l Med. Care, Inc.*, 819 F. Supp. 3d 63, 67 (D. Mass. 2026). Faced with that choice six times over six years, the Committee chose Ochsner six times. The Committee allocated over $14.3 million of plan assets to relieve Ochsner of funding obligations it had already declared and could easily pay. It allocated $0 toward the $11.5 million in administrative expenses extracted from participants' retirement accounts over the same period. ROA.901–02 (Am. Compl. ¶¶ 117–18). Every allocation was "congruent with the interests of another party," *i.e.*, Ochsner, which is responsible for appointing and removing the members of the Committee. *Leigh v. Engle*, 727 F.2d 113, 126 (7th Cir. 1984). "[T]he consistent management of plan assets in congruence with the fiduciaries' personal interests

over a substantial period of time . . . may be probative of whether the fiduciaries have acted solely in the interests of the beneficiaries." *Id.* at 126–27.

The disloyalty inference is reinforced by the structural conflict under which the Committee—itself a creation and appendage of Ochsner, ROA.878 (Am. Compl. ¶¶ 20–22)—operated. Every dollar of forfeitures directed to the contribution offset was a dollar of corporate cash Ochsner did not have to spend. ROA.903–04 (Am. Compl. ¶¶ 127–29).

Where a fiduciary's decision implicates the employer's financial interests, this Court's inquiry becomes even stricter. Conflicted fiduciaries "may have to 'at a minimum' undertake an 'intensive and scrupulous independent investigation of [their] options.'" *Bussian*, 223 F.3d at 299 (quoting *Leigh*, 727 F.2d at 125–26). The Committee undertook no investigation at all, let alone an intensive and scrupulous one, and enlisted no independent fiduciary or advisor despite the conflict. ROA.896–97 (Am. Compl. ¶¶ 93–97). At the pleading stage, these allegations comfortably support the inference that the Committee acted to benefit Ochsner rather than participants. *See In re UnitedHealth ERISA 401(k) Litig.*, No. 25-cv-1751, 2026 U.S. Dist. LEXIS 137236, at *19 (D. Minn. June 22, 2026) (sustaining an identical duty-of-loyalty claim: allegations of a conflicted, benefits-related decision that invariably advantaged the sponsor "permit the plausible inference that Defendants' interests motivated this decision").

To be clear, Plaintiffs do not contend that allocating forfeitures to employer contributions is a *per se* breach. ROA.904 (Am. Compl. ¶ 130). That choice could serve participants' interests in some circumstances—for example, if an employer's financial distress threatens its ability to fund future contributions. In those extenuating circumstances, trust law's duty of impartiality would permit a fiduciary to take into account the importance of preserving the plan's long-term funding. *Cf. Varity*, 516 U.S. at 514.[4] But Plaintiffs alleged that no such potentially extenuating circumstances existed at any point in the Class Period.

At the time of each annual forfeiture allocation, Ochsner had already declared that year's contributions, had sufficient cash and other assets to cover the contributions, and faced no risk of default. ROA.897, 903 (Am. Compl. ¶¶ 96–97, 125). What remains is an unbroken, unexamined, six-year pattern of choosing the sponsor over participants. Those decisions reflect a straightforward violation of the duty of loyalty. At this stage, however, Plaintiffs need only plead facts raising a plausible inference of such a breach. Rule 12(b)(6) requires no more, and Plaintiffs have met their burden.

---

[4] Even then, the fiduciary must engage in a thoughtful, careful process before making such a decision. The "financial distress" hypothetical is, of course, simply one possibility. Neither Rule 12 nor ERISA requires plaintiffs to preemptively present (or rule out) every hypothetical situation that could conceivably excuse or explain a particular course of action. Any such explanation or justification would be a *defense*, presented by the defendant, and it is not Plaintiffs' burden to "anticipate and negate" such a defense in their complaint. *Cf. Cunningham*, 604 U.S. at 702.

### 2. *The Committee's utter lack of process breached the duty of prudence.*

ERISA's duty of prudence requires fiduciaries to act "with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims." 29 U.S.C. § 1104(a)(1)(B). The duty is process-focused: prudence "is evaluated at the time of the [decision] without the benefit of hindsight," *Metzler*, 112 F.3d at 209, and courts evaluating prudence "focus on the process by which [the fiduciary] makes its decisions rather than the results of those decisions," *Braden*, 588 F.3d at 595; *accord Matousek v. MidAmerican Energy Co.*, 51 F.4th 274, 278 (8th Cir. 2022) ("The process is what ultimately matters, not the results."). A plaintiff states a prudence claim by pleading facts—including circumstantial facts—from which a court "may reasonably infer . . . that the process was flawed." ROA.1785 (Op. 9); *see Braden*, 588 F.3d at 595–96. This Court is in accord: prudence "requires fiduciaries to consider the totality of the circumstances," and "fiduciaries must engage in a reasoned decision-making process" in doing so. *Schweitzer*, 960 F.3d at 196–97.

The Amended Complaint alleges a complete failure of any reasoned decision-making process. The Committee did not weigh the respective advantages of its two options. It did not investigate whether Ochsner faced any risk of failing to fund its

declared contributions, or any other circumstance that might plausibly have justified the employer-favoring allocation. It did not consider splitting forfeitures between the two permitted uses. Despite its obvious conflict of interest, it did not consult an independent fiduciary or advisor. ROA.896–97, 899–900, 914 (Am. Compl. ¶¶ 93–97, 104–110, 179). *See Bussian*, 223 F.3d at 299–300 & n.15 (explaining that, in light of a fiduciary conflict, "[i]n some instances, the only open course of action may be to appoint an independent fiduciary" and "conducting an investigation that is structured to remove the taint associated with conflicting interests goes a long way toward satisfying the duty of loyalty."). No independent fiduciary was hired; no carefully structured investigation took place here. *See Donovan v. Cunningham*, 716 F.2d 1455, 1467–68, 1474 (5th Cir. 1983) (requiring conflicted fiduciary to conduct a prudent, independent investigation, yet recognizing that even an independent advisor report "is not a magic wand" but must be evaluated thoughtfully and prudently).

The only "process" the Amended Complaint could identify—because it is the only one reflected in the Plan's trust reports and Form 5500 filings—is that the Committee coordinated with Ochsner and the recordkeeper to calculate the *maximum* amount by which forfeitures could reduce Ochsner's obligations. ROA.896-97 (Am. Compl. ¶¶ 93–96). A process aimed exclusively at maximizing the sponsor's benefit is not a prudent process; it is evidence of no process at all.

The statutory text underscores the point. Prudence is measured "under the circumstances then prevailing" at the time the decision was made. 29 U.S.C. § 1104(a)(1)(B). The Amended Complaint pleads exactly what those circumstances were. In every year, Ochsner had already declared each year's Employer Contributions. In every year, the company had hundreds of millions of dollars in operating gains and ample cash on hand to fund the contributions. And, in every year, there was no risk that any declared contribution would go unfunded. ROA.897–99, 900, 903 (Am. Compl. ¶¶ 96–104, 112, 125). Under those prevailing circumstances, the offset offered participants nothing, and a fiduciary weighing the Plan's two authorized options with any care would have recognized as much. The Committee never weighed anything.

The six-year, 100% one-sided allocation pattern independently evidences a flawed process. Where a fiduciary with two options selects the self-interested one every single time, across changing circumstances and varying forfeiture balances, the natural inference is that the outcomes were automatic rather than deliberated. *See UnitedHealth*, 2026 U.S. Dist. LEXIS 137236, at *16 (the plan's cumulative loss "combined with the fact that the Committee made the same asset-reducing choice each year from 2019 through 2023, plausibly shows an imprudent process").

Furthermore, Plaintiffs cannot be required to plead the contents of the Committee's deliberations before discovery into whether any deliberations ever

occurred in the first place. *Braden*, 588 F.3d at 598 (courts may infer breach from circumstantial allegations because plaintiffs lack pre-discovery access to fiduciaries' internal deliberations); *Allen*, 835 F.3d at 678 ("We agree with the Eighth Circuit: an ERISA plaintiff alleging breach of fiduciary duty does not need to plead details to which she has no access, as long as the facts alleged tell a plausible story."); *Sacerdote*, 9 F.4th at 107 ("[W]e are cognizant that ERISA plaintiffs generally lack the inside information necessary to make out their claims in detail unless and until discovery commences" and "a claim under ERISA may withstand a motion to dismiss based on sufficient circumstantial factual allegations to support the claim, even if it lacks direct allegations of misconduct."); *Seidner v. Kimberly-Clark Corp.*, No. 3:21-cv-867-L, 2023 U.S. Dist. LEXIS 54780, at *14 (N.D. Tex. Mar. 30, 2023) ("ERISA plaintiffs generally lack the inside information and details regarding a fiduciary's internal decision-making process at the pleading stage before conducting discovery.").

At this stage in the proceeding, the record is necessarily limited. Plaintiffs have nevertheless pleaded facts from which, taking reasonable inferences in their favor, a reasonable finder of fact could conclude that the Committee's decision-making process was deficient and unreasonable. On a motion to dismiss, that is all that is (or can be) required.

### C. The Committee's breaches caused losses to the Plan and its participants.

Plaintiffs plausibly alleged the loss element as well.[5] Had the Committee used forfeitures to defray administrative expenses, participants' accounts would have been charged less, and more money would have remained invested and growing. Because Ochsner would have paid its declared contributions in full with corporate cash, the Plan as a whole would have held millions of dollars more in assets. ROA.897–98, 900, 903–06 (Am. Compl. ¶¶ 99–103, 112, 127–28, 136).[6]

One allegation is critical, and the district court was required to accept it as true. Ochsner's decision to make matching contributions did not depend on the availability of forfeiture offsets. Ochsner declared its annual contributions, in amounts approximating $244 million from 2019 through 2023, *before* the allocation decisions were made, and the offsets never amounted to even five percent of the declared match. ROA.897–98 (Am. Compl. ¶¶ 99–101).

---

[5] Plaintiffs also alleged injury to their own individual accounts: their accounts were charged administrative expenses in each year of the class period that forfeitures could have defrayed. ROA.877-78, 901 (Am. Compl. ¶¶ 14–15, 115). These account-level allegations distinguish this case from *Matula v. Wells Fargo & Co.*, 175 F.4th 958, 961 (8th Cir. 2026), where counsel conceded that no harm to the named plaintiff's account had been pled.

[6] A hypothetical from another forfeiture case makes the arithmetic concrete: if a plan holds $100 of non-forfeited funds and $20 in forfeitures, the employer owes $50 in contributions, and expenses are $10, then paying expenses from forfeitures first leaves the plan with $150, while using forfeitures only to offset the employer's contribution leaves the plan with $140. "A $50 'net' contribution occurs in both scenarios, yet the Plan is left with $10 less in the latter. . . . Mathematically, the Plan loses in the second scenario." *Gardner-Keegan v. W.W. Grainger, Inc.*, No. 1:25-cv-5233, 2026 U.S. Dist. LEXIS 13772, at *30–31 (N.D. Ill. Jan. 26, 2026).

Given Ochsner's financial strength, it is plausible and likely that Ochsner would have contributed the same amounts had forfeitures been used for expenses. *See UnitedHealth*, 2026 U.S. Dist. LEXIS 137236, at *12–13 (holding identical allegations plausibly alleged both Article III injury and statutory loss to the plan, and noting that offsets amounting to less than 1% of contributions made it implausible that the employer's contributions "were . . . dependent on the Committee's use of forfeited funds"); *Gardner-Keegan*, 2026 U.S. Dist. LEXIS 13772, at *31 ("Mathematically, the Plan loses" when forfeitures are used for the offset contributions rather than expenses). Defendants' contrary speculation—that Ochsner might have contributed less—contradicts the Amended Complaint and cannot support dismissal. *Lormand*, 565 F.3d at 232–33. Plaintiffs, moreover, also sue under 29 U.S.C. § 1132(a)(3), which authorizes "appropriate equitable relief" for fiduciary breaches without regard to plan-level loss. ROA.876 (Am. Compl. ¶ 6); *see Varity*, 516 U.S. at 510.

## II. The district court's dismissal rests on fundamental misunderstandings of ERISA's fiduciary duties.

As Point I shows, the *prima facie* case is clear. The district court reached the contrary conclusion only through a series of legal errors, each of which independently marred its judgment. Several of those errors, if allowed to stand, would hollow out ERISA's fiduciary protections far beyond the forfeiture context. Defendants may answer by citing other, non-binding district court decisions

dismissing similar claims. Those decisions share the same two borrowed errors: discretion treated as a shield, and fiduciary duty collapsed into benefit delivery. This case should not be decided by head-counting district court decisions from around the country; it should be decided based on the bedrock statutory principles of ERISA fiduciary duty at issue here.[7]

### A. The district court treated the Committee's discretion as eliminating, rather than triggering, fiduciary duties.

The linchpin of the district court's loyalty holding was the Plan's grant of discretion itself: because the matching contributions were "discretionary," the Committee "could have used the [F]orfeitures to pay for administrative expenses and opted not to make contributions," and "[i]n view of this discretion, . . . a fiduciary does not breach its duty of loyalty by discretionarily choosing to apply forfeitures to employer contributions rather than to pay administrative costs." ROA.1783–84 (Op. 7–8) (citations omitted).

[7] The district court observed that other district courts have dismissed similar claims. ROA.1784 (Op. 8 & nn.21–22) (citing cases). Those decisions rest on the same legal errors the district court committed here, and none binds this Court. Other courts, including Judge Eric Tostrud's recent and detailed forfeiture opinion, have engaged with the actual theory as pleaded—a context-specific challenge to an unexamined, invariably self-interested exercise of discretion—and therefore sustained materially identical claims. *See, e.g.*, *UnitedHealth*, 2026 U.S. Dist. LEXIS 137236; *Buescher v. N. Am. Lighting, Inc.*, 791 F. Supp. 3d 873 (C.D. Ill. 2025); *Rodriguez v. Intuit Inc.*, 744 F. Supp. 3d 935 (N.D. Cal. 2024); *McManus v. Clorox Co.*, No. 4:23-cv-05325, 2025 U.S. Dist. LEXIS 43765 (N.D. Cal. Mar. 3, 2025); *Perez-Cruet v. Qualcomm Inc.*, No. 23-cv-1890, 2024 U.S. Dist. LEXIS 93522 (S.D. Cal. May 24, 2024); *Becerra v. Bank of Am. Corp.*, No. 3:24-cv-921, 2025 U.S. Dist. LEXIS 157154 (W.D.N.C. Aug. 12, 2025); *Heet v. Nat'l Med. Care, Inc.*, 819 F. Supp. 3d 63 (D. Mass. 2026); *Stewart v. NextEra Energy, Inc.*, No. 23-81314, 2025 U.S. Dist. LEXIS 219292 (S.D. Fla. Aug. 14, 2025). Indeed, a court surveying all fifty-one forfeiture decisions issued as of June 2026 found "no clear trend or consensus in these decisions that might justify a particular outcome." *UnitedHealth*, 2026 U.S. Dist. LEXIS 137236, at *25-26.

That is the opposite of how ERISA works. Discretion over the use of plan assets is precisely what makes a person a fiduciary, 29 U.S.C. § 1002(21)(A). "[T]he primary function of the fiduciary duty is to constrain the exercise of discretionary powers which are controlled by no other specific duty imposed by the trust instrument or the legal regime." *Varity*, 516 U.S. at 504. Indeed, "[i]f the fiduciary duty applied to nothing more than activities already controlled by other specific legal duties, it would serve no purpose." *Id*. When a plan commits a choice about plan assets to a fiduciary's discretion, ERISA does not shrug; it demands that the choice be made loyally and prudently. The district court's contrary logic—the broader the discretion, the weaker the duty—inverts the statute. Under that reasoning, the plans most in need of fiduciary protection (*i.e.*, those leaving the widest scope of action to fiduciary judgment) would receive the *least* oversight.

ERISA's functional definition of "fiduciary" and *Varity*'s account of the fiduciary duty foreclose that result. Discretion triggers fiduciary obligations; it does not eliminate them. Nor can the Plan's authorization itself excuse the breach. Fiduciaries must follow plan documents only "insofar as" they are "consistent with" ERISA, 29 U.S.C. § 1104(a)(1)(D), which is why "the duty of prudence trumps the instructions of a plan document." *Dudenhoeffer*, 573 U.S. at 421. A plan may make a choice available; only ERISA determines whether the fiduciary's exercise of that choice was loyal and prudent. In ERISA's design, discretion is a duty, not a defense.

### B. The district court's "promised benefits" rationale conflicts with the statute, with Supreme Court authority, and with this Court's decision in *Bussian*.

The district court's second foundational error was its holding, carried over from its first opinion, that "the fiduciary duty is fulfilled where the fiduciary ensures that participants have received their promised benefits." ROA.1783–84 (Op. 7–8). That premise fails at every level. Using forfeiture assets to pay administrative expenses *is* anticipated by the four corners of the Plan; ERISA's text and structure refute the premise; and this Court's decision in *Bussian* forecloses it.

#### *1. The Plan expressly contemplated the participant-benefiting use of forfeitures, and participants were entitled to a loyal and prudent decision between the Plan's options.*

Even accepting the court's premise that fiduciary duties track plan promises, its analysis fails on its own terms. What ERISA concretely guarantees participants in a defined contribution plan is the value of their accounts "unencumbered by any fiduciary impropriety": participants are entitled "not only to what is in their accounts, but also to what should be there given the terms of the plan and ERISA's fiduciary obligations." *Graden*, 496 F.3d at 297. The Plan, in turn, expressly provided that forfeitures could be used "to pay administrative expenses of the Plan," ROA.888 (Am. Compl. ¶ 59)—a use that benefits participants by allowing their accounts to bear fewer expenses and grow larger over time. Ochsner, as settlor, could have drafted the Plan to require that forfeitures always reduce employer

contributions first; that very design existed in several of the district court cases dismissing forfeiture claims. *See, e.g.*, *Heet*, 819 F. Supp. 3d at 66 (plan required offset first); *Gardner-Keegan*, 2026 U.S. Dist. LEXIS 13772, at *18–19 (plan gave no discretion). Ochsner instead wrote a plan that put both options on the table and committed the choice to fiduciaries' discretion. By categorically refusing to consider the participant-benefiting option, the Committee deprived participants of exactly what ERISA promises: account values shaped by a loyal and prudent exercise of the discretion the Plan conferred.

For the same reason, the district court's concern (adopted from *Hutchins*) that Plaintiffs' theory "would create an additional benefit to participants not contemplated in the plans," ROA.857, 861 (First Op. 8, 12); ROA.1781 (Op. 5), is misplaced. Defraying expenses with forfeitures is not an "additional" benefit; it is one of the two uses the Plan itself enumerates. It is also one of the two exclusive purposes for plan assets set forth in ERISA, which commands fiduciaries to "defray[] reasonable expenses of administering the plan." 29 U.S.C. § 1104(a)(1)(A)(ii). A use of plan assets that the plan document expressly authorizes, and the statute expressly blesses, cannot be "uncontemplated."[8] *See* ROA.891 (Am. Compl. ¶ 72).

[8] No remedy requested in the Amended Complaint would leave Plaintiffs and the other participants with *more* than the sum of (1) their contributions, (2) their individual vested matches, and (3) their investment gains. There is therefore no "additional" benefit requested here.

### 2. *Bussian forecloses the district court's premise that plan-authorized conduct is immune from fiduciary review.*

More fundamentally, the "promised benefits" premise cannot be squared with this Court's precedent. It is well-settled that, even if the Plan contemplates a certain action in some circumstances, the fiduciary must still make that decision with the highest degree of loyalty and prudence.

In *Bussian*, the employer terminated a plan and purchased annuities. Although ERISA and the plan permitted this course of action, this Court squarely rejected any argument that mere authorization ends the fiduciary inquiry: "simply because ERISA allows an employer to recoup surplus assets does not mean that a fiduciary's acts undertaken to implement a plan's termination may deviate from ERISA's command that a 'fiduciary shall discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries.'" 223 F.3d at 295–96 (quoting 29 U.S.C. § 1104(a)(1)). *Bussian* then held that fiduciary decisions in which the employer has a financial stake must be made "with an eye single to the interests of the participants and beneficiaries," backed where necessary by an "intensive and scrupulous independent investigation." *Id.* at 299. The question is not merely whether the fiduciary could take the challenged action in the abstract, under any conceivable set of circumstances. Courts must also consider how the fiduciary acted within the context of the specific prevailing circumstances, and whether the fiduciary used a robust and prudent process before making its decision.

The district court distinguished *Bussian* on the ground that the *Bussian* participants "did not receive their promised benefits," whereas here participants received theirs. ROA.858–59 (First Op. 9–10). That distinction misreads *Bussian* twice over. First, *Bussian*'s rule is not conditioned on a shortfall in promised benefits; it governs the *manner* in which fiduciaries exercise plan-authorized discretion whenever the employer's interests are in play. Second, as shown above, participants here did *not* receive everything they were entitled to: they were entitled to a loyal and prudent allocation decision, and to account balances "unencumbered by any fiduciary impropriety." *Graden*, 496 F.3d at 297. They did not get either.

***3. ERISA's text and structure refute the "promised benefits" premise.***

The statute itself refutes the notion that fiduciary duties end once promised benefits are paid. Section 1104(a)(1)(A) imposes duties with respect to *two* exclusive purposes: "providing benefits" *and* "defraying reasonable expenses of administering the plan." 29 U.S.C. § 1104(a)(1)(A)(i)–(ii). A rule that measures fiduciary compliance solely by benefit delivery reads clause (ii) out of the statute—in a case that is *about* the defrayal of administrative expenses.

ERISA's "carefully integrated civil enforcement provisions," *Mass. Mut. Life Ins. Co. v. Russell*, 473 U.S. 134, 146 (1985), confirm the point. Section 1132(a)(1)(B) already gives participants a cause of action to recover "benefits due . . . under the terms of the plan." Plaintiffs plead no cause of action under this subsection, and

no one contends Plaintiffs were denied a benefit due under the terms of the Plan. If fiduciary duties required nothing more than paying plan benefits, the separate causes of action in § 1132(a)(2) and (a)(3), which allow participants to sue for fiduciary breaches causing losses *to the plan,* would be superfluous. *See Varity*, 516 U.S. at 512; *Cigna Corp. v. Amara*, 563 U.S. 421, 438–39 (2011).

This Court, sitting *en banc*, has confirmed that defined contribution plan participants may pursue exactly such plan-loss claims under § 1132(a)(2) and (a)(3). *Milofsky v. Am. Airlines, Inc.*, 442 F.3d 311, 313 (5th Cir. 2006) (*en banc*) (*per curiam*). None of that would be true if fiduciary duty were "fulfilled" whenever promised benefits are paid.

ERISA's own fiduciary provisions confirm the point: if paying benefits according to plan terms exhausted the fiduciary's duty, § 1104(a)(1)(D)—which already requires adherence to plan documents—would be the only standard Congress needed to set. The loyalty, prudence, and diversification commands of § 1104(a)(1)(A)–(C) would be pointless, or at least redundant. But that is not the case. Defendants, in this very litigation, argued below that Plaintiffs' claims were "disguised" benefits claims that should have been brought under § 1132(a)(1)(B). This argument presupposes that fiduciary-breach claims protect something distinct from the payment of individual plan benefits. ROA.866–68 (First Op. 17–19). The statute, and the case law, confirm that this is the case. *Cf. Swenson v. United of*

*Omaha Life Ins. Co.*, 876 F.3d 809, 812 (5th Cir. 2017) (claims for benefits due under a plan proceed under § 1132(a)(1)(B)).

Finally, the district court's premise would immunize whole categories of established fiduciary claims. Participants in a 401(k) plan are not "promised" any particular recordkeeping fee, yet courts regularly allow claims against fiduciaries for imprudently or disloyally causing plans to overpay recordkeepers. *See, e.g.*, *Chavez v. Plan Ben. Servs*., 77 F.4th 370 (5th Cir. 2023), *amended at* 108 F.4th 297 (5th Cir. 2024); *Perkins v. United Surgical Partners Int'l, Inc.*, 2024 U.S. App. LEXIS 8804, at *11–14 (5th Cir. Apr. 11, 2024) (unpublished); *Tussey v. ABB, Inc.*, 746 F.3d 327, 336 (8th Cir. 2014). Participants are not "promised" low-cost share classes, yet failing to obtain them breaches the duty of prudence. *See Tibble v. Edison Int'l*, 843 F.3d 1187, 1198 (9th Cir. 2016) (*en banc*). The Supreme Court has confirmed that fiduciaries breach their duties by failing to remove imprudent investments "within a reasonable time," an obligation nowhere "promised" in any plan document. *Hughes v. Nw. Univ.*, 595 U.S. 170, 176 (2022). On the district court's logic, all of those claims would fail at the threshold because the participants "received their promised benefits." ERISA does not tolerate that result.

### C. The district court's "discretionary contributions" counterfactual cannot support dismissal.

The district court placed decisive weight on the observation that Ochsner's contributions were discretionary under the Plan, reasoning that the Committee

"could have used the [F]orfeitures to pay for administrative expenses and opted not to make contributions" in that amount (or at all). ROA.1783 (Op. 7). This counterfactual fails for two independent reasons.

*First*, the counterfactual is speculation deployed against the pleader. A fiduciary may, of course, take account of the sponsor's circumstances: had the Committee investigated and found a genuine risk that Ochsner could not fund its declared contributions, the offset might have been a defensible choice—as the Amended Complaint itself acknowledges. ROA.904 (Am. Compl. ¶ 130). But nothing of the kind is pleaded here. The court instead presumed that Ochsner—which had already declared its contributions and had itself written the Plan provision authorizing expense defrayal—might have responded to a participant-favoring allocation by withholding contributions. Plaintiffs were not required to disprove that hypothesis. A court may not dismiss because a complaint fails to "rule out every possible lawful explanation for the conduct he challenges," because such a rule would "invert the principle that the complaint is construed most favorably to the nonmoving party," *Sacerdote*, 9 F.4th at 108. Plaintiffs are certainly not required to preemptively plead around a hypothetical settlor reaction that never actually occurred. Nor can what Ochsner hypothetically might have done as settlor immunize what the Committee actually did as a fiduciary; the two-hats doctrine turns on the hat actually worn. *Pegram* v. Herdrich, 530 U.S. 211, 225–26 (2000); *cf.*

*UnitedHealth*, 2026 U.S. Dist. LEXIS 137236, at *17–18 (rejecting the argument that the employer "was free to amend the Plan during the class period to eliminate contributions" because it contradicted the complaint's allegations).

*Second*, the counterfactual contradicts the Amended Complaint. Plaintiffs alleged that in each year of the Class Period Ochsner declared its Employer Contributions (in amounts dwarfing the forfeiture offsets) *before* the allocation decisions were made, that Ochsner was financially strong throughout the period, and that Ochsner would have fully funded the declared contributions no matter how forfeitures were allocated. ROA.897–98, 900, 903 (Am. Compl. ¶¶ 99–103, 112, 125).[9] On a Rule 12(b)(6) motion, those well-pleaded allegations must be accepted as true, and all reasonable inferences drawn in Plaintiffs' favor. *Lormand*, 565 F.3d at 232–33. The district court did the opposite: it credited the defense-friendly speculation that Ochsner would have responded to a participant-favoring allocation by contributing less or nothing, ROA.1783 (Op. 7). This is an inference *against* the pleader, drawn from outside the complaint, on a question of fact. That alone is reversible error. The court's approach also faulted Plaintiffs, in effect, for failing to

[9] Once Ochsner declared an Employer Contribution, the Plan provides that the "Employer shall have the obligation to pay the contributions," ROA.887 (Am. Compl. ¶ 54), and the Department of Labor has explained that "when an employer fails to make a required contribution to a plan in accordance with the plan documents, the plan has a claim against the employer for the contribution, and that claim is an asset of the plan." DOL Field Assistance Bulletin 2008-01. The district court rejected Plaintiffs' reading of this provision. ROA.1782–83 (Op. 6–7). This Court need not resolve that dispute of plan interpretation, because Plaintiffs' claims do not depend on it: even if every Employer Contribution was discretionary until paid, the fiduciary allocation decision challenged here remained subject to ERISA's duties of loyalty and prudence.

rule out a defense-friendly explanation of the facts. This approach "invert[s] the principle that the complaint is construed most favorably to the nonmoving party on a motion to dismiss." *Sacerdote*, 9 F.4th at 108 ("[W]e do not require an ERISA plaintiff to rule out every possible lawful explanation for the conduct he challenges."). The counterfactual is also implausible on its own terms. Ochsner, as settlor, wrote the Plan provision authorizing the use of forfeitures to pay administrative expenses. ROA.888 (Am. Compl. ¶ 59). The hypothetical suggestion that Ochsner might have responded by slashing previously declared retirement contributions—punishing its own workforce and undermining the recruitment and retention purposes those contributions serve—is not an inference a court may draw against the pleader at this stage.

### D. Plaintiffs pled a context-specific claim, not a categorical rule—and the permissibility of the offset under tax guidance does not answer the fiduciary question.

The district court refused to credit the inference of imprudence because doing so, it said, "would create a categorical rule that fiduciaries are always assumed to act imprudently when they apply forfeitures to discretionary employer matching contributions over administrative fees." ROA.1786 (Op. 10). But Plaintiffs disclaimed any such rule, expressly and repeatedly. ROA.904 (Am. Compl. ¶ 130). Their claim is context-specific: Plaintiffs allege a conflicted fiduciary, a financially flush sponsor with contributions already declared, no risk of default, no deliberative

process of any kind, and a six-year unbroken run of maximally sponsor-favoring allocations. A fiduciary who considered the options and reasonably chose the offset in different circumstances, such as a sponsor in genuine financial distress, would present a different case. This is exactly why cases addressing *per se* theories "are not helpful." *UnitedHealth*, 2026 U.S. Dist. LEXIS 137236, at *17. And Ochsner always held the settlor pen: if it wanted forfeitures applied to its own contributions first in every year, it needed only to write the Plan that way, as many sponsors did. *See supra* Part II.B.1. Accepting Plaintiffs' allegations does not condemn every plan that uses forfeitures for contributions; it holds only that these allegations, in this context, state a plausible claim. That is how Rule 12(b)(6) is supposed to work in ERISA's "context specific" inquiry. *Dudenhoeffer*, 573 U.S. at 425.

Nor do the decades of Treasury and IRS pronouncements on which the district court's first opinion and the *Hutchins* line of decisions rely, ROA.855, 857 (First Op. 6, 8), support dismissal. Treasury's guidance, including its 2023 proposed regulation, confirms only that forfeitures *may* permissibly be used "(1) to pay plan administrative expenses, (2) to reduce employer contributions under the plan, or (3) to increase benefits in other participants' accounts in accordance with plan terms." Use of Forfeitures in Qualified Retirement Plans, 88 Fed. Reg. 12,282 (proposed Feb. 27, 2023). The older regulation on which the *Hutchins* line leans, 26 C.F.R. § 1.401-7(a) (1963), by its terms addresses defined benefit plans—traditional pension

plans in which the employer "generally shoulders the investment risk" and "must make up for any deficits," *Beck v. PACE Int'l Union*, 551 U.S. 96, 98 (2007). Those plans present a funding-risk concern with no analogue in a defined contribution, individual account plan like this one. *See Gardner-Keegan*, 2026 U.S. Dist. LEXIS 13772, at *23 (26 C.F.R. § 1.401-7(a) is "not binding" in a defined contribution forfeiture suit). Tax-qualification rules address what plan designs, uses, and options are permitted; they say nothing about how a conflicted fiduciary for a particular plan must decide among those permitted options.

Fiduciary responsibility under Title I of ERISA is the Department of Labor's domain; it is not a question for the Department of Treasury. *See* Reorganization Plan No. 4 of 1978, § 1, 5 U.S.C. app. 1; 29 U.S.C. § 1135.[10] Simply put, whether a Plan is tax-qualified, and whether a fiduciary has followed its statutory duties of loyalty and prudence, are not remotely the same question.

Treasury's pronouncements thus leave the Committee exactly where it began: with a discretionary choice requiring the exercise of fiduciary loyalty and prudence. "The fact that the Committee might lawfully have used forfeitures to reduce [the sponsor's] contributions does not answer whether the Committee's decision to do that complied with its duty of prudence." *UnitedHealth*, 2026 U.S. Dist. LEXIS

[10] President Carter's preamble statement to Congress, delivered when transmitting this Reorganization Plan No. 4, was straightforward and to the point: "Labor will have statutory authority for fiduciary obligations. ERISA prohibits transactions in which self-interest or conflict of interest could occur, but allows certain exemptions from these prohibitions. Labor will be responsible for overseeing fiduciary conduct under these provisions." (Aug. 10, 1978).

137236, at *18. The Department of Labor's *amicus* brief in *Wright v. JPMorgan Chase & Co.*, No. 25-4235 (9th Cir.), which Defendants filed below, ROA.1471–98, is not to the contrary. Like a similar brief the Department filed in the *Hutchins* appeal, it responds to a categorical theory that fiduciaries with discretion must always use forfeitures to defray expenses. Plaintiffs expressly disclaim any such *per se* or categorical approach. ROA.904 (Am. Compl. ¶ 130). The Amended Complaint also pleads significantly more facts regarding the Committee's failures in prudence and process, as opposed to *Wright's* reliance on a categorical assumption. In addition, the Department's position in *Wright* relied on the unique expense funding features of the *Wright* Plan, which constrained the fiduciaries' conduct in a way that is simply not present here, in the Ochsner Plan. ROA.1491–92. The *Wright amicus* brief is therefore inapplicable to this matter.

### E. The district court never analyzed the prudence claim as a process claim.

Finally, the district court committed reversible error by failing to engage with the duty of prudence on its own process-focused terms. The court correctly recited that a prudence claim survives where circumstantial allegations support an inference "that the process was flawed," ROA.1785 (Op. 9), but it never examined the process allegations actually pleaded in the Amended Complaint. It said nothing about the allegation that the Committee's only process was coordinating with Ochsner and the recordkeeper to compute the maximum offset, the Committee's failure to investigate

default risk, the absence of an "independent and objective plan fiduciary" in the face of a structural conflict, or the Committee's failure to consider the expense-defrayal option (in whole or in part). ROA.896–97, 899–900, 914 (Am. Compl. ¶¶ 93–97, 104–111, 179). Instead, the court recharacterized the claim as if Plaintiffs were complaining about the outcome alone: "Plaintiffs would have preferred a different outcome," ROA.1786 (Op. 10). It then rejected its own strawman.

But Plaintiffs' prudence claim does not rest merely on the outcome; it rests on the Committee's (nonexistent) process. True, the repeated pattern of identical outcomes serves as circumstantial evidence, allowing an inference that no meaningfully prudent process occurred. That is precisely the kind of inference allowed in prudence cases, because plaintiffs have no pre-discovery access to a fiduciary's internal deliberations and may plead process failures circumstantially. *Braden*, 588 F.3d at 595–98; *Allen*, 835 F.3d at 678. The duties of loyalty and prudence are distinct obligations, and a court must analyze each separately. The district court's failure to conduct any process-based analysis of the prudence claim, while demanding that Plaintiffs plead "more" without acknowledging the actual process allegations in the Amended Complaint as it stands, independently requires reversal.

### III. Because the fiduciary-breach claims should be reinstated, so should the derivative failure-to-monitor claim.

The district court dismissed Plaintiffs' failure-to-monitor claim against Ochsner solely because it is derivative of the loyalty and prudence claims. ROA.1789 (Op. 13). Because the underlying claims were erroneously dismissed, the monitoring claim should be reinstated with them. *See Perkins v. United Surgical Partners Int'l, Inc.*, 2024 U.S. App. LEXIS 8804, at *13 (5th Cir. Apr. 11, 2024) (unpublished) (reversing dismissal of duty-to-monitor claim along with the underlying prudence claim).

## CONCLUSION

For the foregoing reasons, this Court should reverse the district court's judgment and remand for further proceedings.

SUBMITTED BY:

*<u>/s/ Charles J. Stiegler</u>*
Charles J. Stiegler
Stiegler Law Firm, L.L.C.
318 Harrison Ave., Suite 104
New Orleans, LA 70124
(504) 267-0777
charles@stieglerlawfirm.com

Chirinos Law Firm, P.L.L.C.
Tulio D. Chirinos
20283 State Road 7, Suite 592
Boca Raton, FL 33498
(561) 299-6334
tchirinos@chirinoslawfirm.com
*Attorneys for Plaintiffs-Appellants*

# CERTIFICATE OF SERVICE

I certify that on August 10, 2026, the foregoing Brief for Plaintiffs-Appellants was filed with the Clerk of Court for the United States Court of Appeals for the Fifth Circuit using the CM/ECF system. All participants in the case are registered CM/ECF users, and service will be accomplished by the CM/ECF system.

/s/*Charles J. Stiegler*
Charles J. Stiegler
Attorney of Record for Plaintiffs-Appellants

## CERTIFICATE OF COMPLIANCE

1. This document complies with the type-volume limit of Fed. R. App. P. 32(a)(7)(B) because, excluding the parts of the document exempted by Fed. R. App. P. 32(f) and 5th Cir. R. 32.2, this document contains 11,089 words.

2. This document complies with the typeface requirements of FED. R. APP. P. 32(a)(5) and 5th Cir. R. 32.1, and the type-style requirements of FED. R. APP. P. 32(a)(6) because this document has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point Times New Roman font.

/s/*Charles J. Stiegler*
Charles J. Stiegler