**No. 26-30236**

**UNITED STATES COURT OF APPEALS**
**FOR THE FIFTH CIRCUIT**

MEGAN ESTAY, individually and as a representative of a class of participants and beneficiaries on behalf of the Ochsner Clinic Foundation 401(K) Plan; FRANCESCA MESSORE, individually and as a representative of a class of participants and beneficiaries on behalf of the Ochsner Clinic Foundation 401(K) Plan

*Plaintiffs-Appellants*,

v.

OCHSNER CLINIC FOUNDATION; RETIREMENT BENEFITS COMMITTEE; UNIDENTIFIED PARTIES,

*Defendants-Appellees*.

Appeal from the U.S. District Court for the Eastern District of Louisiana
No. 2:25-cv-00507 (Hon. Jane Triche Milazzo)

# BRIEF FOR THE CHAMBER OF COMMERCE OF THE UNITED STATES OF AMERICA AND THE ERISA INDUSTRY COMMITTEE AS *AMICI CURIAE* IN SUPPORT OF DEFENDANTS-APPELLEES AND AFFIRMANCE

Janet Galeria
Mariel A. Brookins
U.S. CHAMBER LITIGATION CENTER
1615 H Street, NW
Washington, DC 20062

*Counsel for the Chamber of Commerce of the United States of America*

Jordan Bock
James O. Fleckner
Lee J. Moore
GOODWIN PROCTER LLP
100 Northern Avenue
Boston, MA 02210
(617) 570-1000
jbock@goodwinlaw.com

*Counsel for Amici Curiae*

October 16, 2026

## CERTIFICATE OF INTERESTED PARTIES

Pursuant to Fifth Circuit Rule 29.2, the undersigned counsel of record certifies that, in addition to those already listed in the parties' briefs, the following listed persons and entities as described in the fourth sentence of Rule 28.2.1 have an interest in the outcome of this case. These representations are made in order that the judges of this court may evaluate possible disqualification or recusal.

*Amici*: Each of the *Amici Curiae* individually certifies that it is a non-profit corporation, that it does not have a parent corporation, and that no publicly held corporation has ten percent or greater ownership.

*Counsel for Amici*: Jordan Bock, James O. Fleckner, and Lee J. Moore of Goodwin Procter LLP; Janet Galeria and Mariel A. Brookins of the U.S. Chamber Litigation Center.

Dated: October 16, 2026

*/s/ Jordan Bock*

Jordan Bock
Goodwin Procter LLP
100 Northern Avenue
Boston, MA 02210
(617) 570-1000
jbock@goodwinlaw.com

# TABLE OF CONTENTS


INTEREST OF THE *AMICI CURIAE* .......................................................... 1

INTRODUCTION AND SUMMARY OF ARGUMENT ..................................... 2

ARGUMENT ................................................................................................ 6

I. The use of forfeitures to reduce employer contribution obligations has extensive historical support. ....................................... 6

A. The Treasury Department's longstanding view of forfeitures validates Ochsner's decisions here. ......................... 7

1. The Treasury Department's treatment of forfeitures supports Ochsner's interpretation. ................. 7

2. The Treasury Department has long provided that employers may use forfeitures to reduce employer contributions. ................................................................... 9

B. Congress has likewise consistently recognized that forfeitures may and will be used to reduce employer contributions. ........................................................................ 11

C. Plaintiffs' theory would flip longstanding practice on its head. ........................................................................................ 13

II. Plaintiffs' claims fail as a matter of law for two independent reasons. ........................................................................................ 14

A. Plaintiffs' claims fail under ERISA § 514(d) because the conduct Plaintiffs challenge is consistent with Treasury Regulations. ....................................................................... 15

B. Plaintiffs' claims are implausible under ERISA. ..................... 18

1. ERISA does not require plan sponsors to provide any particular level of benefits. .................................... 19

2. Plaintiffs' approach to the Plan document undermines their own position. .................................... 22

III. Plaintiffs' claims, if accepted, will undermine ERISA's text and purpose and harm plan participants....26

A. Plaintiffs' approach cannot be squared with Congress's objectives in enacting ERISA. ....26

B. Plaintiffs' theory harms both employers and employees....27

CONCLUSION....29

# TABLE OF AUTHORITIES

**Cases** **Page(s)**

*Bennett v. Conrail Matched Sav. Plan Admin. Comm.*,
168 F.3d 671 (3d Cir. 1999) ....................18, 20

*Cent. Laborers' Pension Fund v. Heinz*,
541 U.S. 739 (2004)....................8

*Commodity Futures Trading Comm'n v. Schor*,
478 U.S. 833 (1986)....................12

*Cunningham v. Cornell Univ.*,
604 U.S. 693 (2025)....................2

*First Nat'l Bank of Chi. v. Comptroller of Currency of U.S.*,
956 F.2d 1360 (7th Cir. 1992) ....................15, 18

*Foltz v. U.S. News & World Rep., Inc.*,
865 F.2d 364 (D.C. Cir. 1989)....................19

*Hernandez v. AT&T Servs., Inc.*,
2025 WL 3208360 (C.D. Cal. Nov. 14, 2025) ....................14

*Hughes Aircraft Co. v. Jacobson*,
525 U.S. 432 (1999)....................23, 26

*Lockheed Corp. v. Spink*,
517 U.S. 882 (1996)....................18, 19, 23, 27

*Loomis v. Exelon Corp.*,
658 F.3d 667 (7th Cir. 2011) ....................19, 20, 21

*Madrigal v. Kaiser Found. Health Plan, Inc.*,
2025 WL 1299002 (C.D. Cal. May 2, 2025)....................14

*Martin v. Nat'l Bank of Alaska*,
828 F. Supp. 1427 (D. Alaska 1992) ....................15

*Polanco v. WPP Grp. USA, Inc.*,
2025 WL 3003060 (S.D.N.Y. Oct. 27, 2025)....................14

*In re Pulaski Highway Express, Inc.*,
41 B.R. 305 (Bankr. M.D. Tenn. 1984)....................16

*Raymond B. Yates, M.D., P.C. Profit Sharing Plan v. Hendon*,
541 U.S. 1 (2004)....................26

*US Airways, Inc. v. McCutchen*,
569 U.S. 88 (2013)....................20, 27

*Varity Corp. v. Howe*,
516 U.S. 489 (1996)....................28

*Wright v. Or. Metallurgical Corp.*,
360 F.3d 1090 (9th Cir. 2004)....................19

**Statutes**

15 U.S.C. § 78bb(e)....................17

26 U.S.C. § 401....................8

26 U.S.C. § 401(a)(2)....................8, 13

26 U.S.C. § 401(a)(8)....................11

26 U.S.C. § 411....................17

26 U.S.C. § 4975....................7

29 U.S.C. § 1104(a)(1)....................16

29 U.S.C. § 1104(a)(1)(A)....................8, 13

29 U.S.C. § 1104(a)(1)(B)....................6

29 U.S.C. § 1104(a)(1)(D)....................24

29 U.S.C. § 1144(d)....................14, 15

29 U.S.C. § 1202(c)....................7

29 U.S.C. § 1204(a)....................7

Pub. L. No. 99-514, § 1119(a), 100 Stat. 2085 (1986) ....................12

Reorganization Plan No. 4 of 1978, 5 U.S.C. App. 1, 92 Stat. 3790 ....................7

**Other Authorities**

26 C.F.R. § 1.401-7(a) ....................9, 17

88 Fed. Reg. 12282 (Feb. 27, 2023) ....................12, 13

Dep't of the Treasury, Internal Revenue Serv., *Retirement News for Employers* 4-5, Publ'n 4278 (Spring 2010), https://bit.ly/3Tp0lh0 ....................11, 25

ERISA Technical Release No. 86-1 (1986), http://bit.ly/3GhiVER ....................17

H.R. Rep. No. 99-841, Vol. II (1986) ....................12

Rev. Rul. 67-68, 1967-1 C.B. 86, 1967 WL 15409 (Jan. 1, 1967) ....................9

Rev. Rul. 71-313, 1971-2 C.B. 203, 1971 WL 26693 (Jan. 1, 1971) ....................9

Rev. Rul. 80-155, 1980-1 C.B. 84, 1980 WL 130029 (June 16, 1980) ....................25

U.S. Dep't of Lab. Advisory Op. No. 79-56A, 1979 WL 7031 (Aug. 9, 1979) ....................11

U.S. Dep't of Lab. Advisory Op. No. 79-90A, 1979 WL 7027 (Dec. 28, 1979) ....................16

U.S. Dep't of Lab., *History of EBSA and ERISA*, https://bit.ly/45UrBeC ....................7

Jacklyn Wille, *ERISA Class Actions Soar in 2026 as New Legal Theories Emerge*, Bloomberg Law (Apr. 13, 2026), https://bit.ly/4uZLafi ....................28

## INTEREST OF THE *AMICI CURIAE*[1]

The Chamber of Commerce of the United States of America ("Chamber") is the world's largest business organization. As the nation's leading advocate for business, the Chamber represents companies and professional organizations of every size, in every industry sector, and from every region of the country. An important function of the Chamber is to represent the interests of its members in matters before Congress, the Executive Branch, and the courts. To that end, the Chamber regularly files amicus briefs in cases, like this one, that raise issues of concern to the nation's business community.

The ERISA Industry Committee ("ERIC") is a national non-profit trade association representing approximately 100 of the nation's largest employers in their capacity as sponsors of employee benefit plans for their workers, retirees, and families.

Many of *Amici*'s members maintain, administer, and/or provide services to employee-benefit plans governed by the Employee Retirement Income Security Act of 1974 ("ERISA"), covering virtually all Americans who work in the private sector and participate in employer-sponsored programs. *Amici* regularly participate as

---

[1] All parties have consented to the filing of this brief. *See* Fed. R. App. P. 29(a)(2). No counsel for a party authored this brief in whole or in part. No party, no counsel for a party, and no person other than *Amici*, their members, and their counsel made a monetary contribution to fund the preparation or submission of this brief.

*amicus curiae* in this Court and others on issues affecting benefit-plan design or administration. *See, e.g.*, *Cunningham v. Cornell Univ.*, 604 U.S. 693 (2025); *Guenther v. BP Ret. Accumulation Plan*, No. 24-20551 (5th Cir. July 14, 2025), ECF No. 57-1.

*Amici* file this brief to provide the Court with greater context and historical background regarding employers' use of forfeited employer contributions and to explain why an employer's use of those forfeited contributions to offset employer contributions does not give rise to liability for a breach of fiduciary duty.

## INTRODUCTION AND SUMMARY OF ARGUMENT

Employees are always fully vested in their own contributions to their defined-contribution retirement plans. ERISA requires no less. But the rule is different for employer contributions, which under ERISA can be made subject to a vesting schedule that encourages employee retention. When retirement plan participants leave their employment before their employer's contributions fully vest, they forfeit their interest in the non-vested portion of those contributions. Under ERISA, the forfeited employer contributions cannot be refunded to the employer: To protect participants, Congress required that once employer contributions are placed in the trust, they may be used only to provide plan benefits or to defray the reasonable expenses of administering the plan. Plan sponsors therefore often design their plans to provide flexibility surrounding the use of forfeitures, including to permit those

forfeited amounts to be used to provide promised contributions for remaining participants—fulfilling their initial purpose in the plan.

Despite a recent rash of lawsuits, this common practice has long been understood to be entirely permissible under ERISA. The Treasury Department (which regulates employee-benefit plans alongside the Department of Labor ("DOL")) has specified that this practice conforms to the provisions of the Tax Code governing tax-advantaged retirement plans like the one at issue here. For decades—predating ERISA's enactment—the Treasury Department has expressly allowed the use of forfeited contributions in these tax-advantaged plans to offset remaining employer contributions under the Tax Code, including Tax Code provisions that mirror ERISA's fiduciary provisions.

Congress has acknowledged the same. It would be legally incoherent for ERISA to impose fiduciary liability for a practice that is allowed under the Tax Code's analogous regulations—a practice, notably, that does not result in participants receiving fewer benefits than they were promised. In reliance on this settled understanding, many employers have specified in plan documents that they have the flexibility to choose whether to use forfeitures to offset employer contributions or for other permissible purposes, *e.g.*, to restore benefits for former employees who return to employment or to pay the reasonable expenses of administering the plan. These expenses include not only administrative fees, which

are most commonly paid by participants, but also the legal, consultant, auditor, investment, and other fees often covered by the plan sponsor. Importantly, when a plan containing this type of provision is submitted to the Internal Revenue Service for an advance determination that the plan meets all required provisions of the Tax Code, the IRS has for decades issued favorable "determination letters" confirming that the plan meets these requirements.

Plaintiffs urge this Court to disrupt the longstanding consensus regarding the use of forfeitures. Their theory is that the Ochsner Clinic Foundation ("Ochsner") could not use forfeited employer contributions to offset employer contributions for other participants, notwithstanding that the Ochsner Plan documents expressly authorize just that. Plaintiffs couch their argument as a fiduciary duty violation, asserting (with no factual support) that Defendants failed to undertake a deliberative process when deciding how to allocate forfeitures. But, despite their insistence otherwise, Plaintiffs' approach results in a categorical prohibition on the use of forfeitures to offset employer contributions for participants who are currently in the plan whenever the plan also allows forfeitures to be applied to administrative expenses.

The only example Plaintiffs can muster of when an employer might permissibly use forfeitures to offset employer contributions is when the employer is facing an economic collapse so severe that it would be at risk of default. Opening

Br. 42-43. But that example makes little sense: If Ochsner were financially unable to make contributions, it simply would decline to do so, as all of its employer contributions are discretionary under the Plan.[2] Moreover, this supposed exception is meaningless for the vast majority of plan sponsors, all of whom would be required to use forfeitures to pay administrative expenses over employer contributions whenever their plan offers a choice between those options. Thus, Plaintiffs' fundamental objection is not to Defendants' process, but to the use of forfeitures to offset employer contributions—a practice that is indisputably permissible under ERISA.

Plaintiffs offer no valid basis for adopting this novel approach. Nor do they meaningfully address how their position can be squared with the Treasury Department's longstanding position. At bottom, Plaintiffs' theory is fundamentally inconsistent with a foundational tenet of ERISA—that Congress afforded employers flexibility regarding whether and on what terms to provide benefits. Apart from an employer's contractual obligations, as set out in plan documents, an employer is not obligated to provide any particular level of benefits or to provide employees *more* than their contractually defined benefits. And here, there is no dispute that Ochsner followed its plan document to a T. This Court should reject Plaintiffs' efforts to

[2] Plaintiffs' prohibited transaction claim further belies their assertion that they do not argue for a categorical rule against the use of forfeitures to offset employer contributions.

require employers to offer a purported benefit (free or highly subsidized plan expenses) that has no basis in either the text of ERISA or the text of the plan document.

## ARGUMENT

### I. The use of forfeitures to reduce employer contribution obligations has extensive historical support.

Retirement plans may operate *exactly* in the way that Plaintiffs fault Ochsner's Plan for operating here. That is the inevitable conclusion that follows from decades of practice reflected in long-existing and proposed clarifying regulations from the Treasury Department, as well as legislative history.

This extensive history is highly relevant. ERISA commands fiduciaries to act "with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims." 29 U.S.C. § 1104(a)(1)(B). Despite Plaintiffs' novel theory about how plans *should* operate, a long-established practice based on a settled understanding of the relevant regulatory and statutory context clearly bears both on what a plan sponsor designing its plan would expect and on how a reasonable and prudent plan administrator would act "under the circumstances then prevailing." *Id.*

### A. The Treasury Department's longstanding view of forfeitures validates Ochsner's decisions here.

#### 1. The Treasury Department's treatment of forfeitures supports Ochsner's interpretation.

The Treasury Department's understanding of how forfeitures may be used is highly probative because ERISA and the Tax Code are inextricably linked. Indeed, the "401(k)" in "401(k) plan" is a Tax Code designation, not an ERISA designation, and ERISA itself amended the Tax Code and serves as the source of many of the Tax Code's requirements for plans to qualify for tax-advantaged status. *See, e.g.*, U.S. Dep't of Lab., *History of EBSA and ERISA*, https://bit.ly/45UrBeC ("Title II of ERISA, which amended the Internal Revenue Code to parallel many of the Title I rules, is administered by the IRS."). The DOL and the Treasury Department therefore coordinate in promulgating regulations and enforcing ERISA to the extent the statutes overlap. *See* 29 U.S.C. § 1204(a). The Treasury Department also has the statutory authority to issue regulations implementing particular provisions of ERISA, including the vesting provisions that often generate forfeitures. *See* Reorganization Plan No. 4 of 1978, 5 U.S.C. App. 1, 92 Stat. 3790 (transferring relevant authority to the Treasury Secretary); 29 U.S.C. § 1202(c) (Treasury Department's authority over ERISA's participation, vesting, and funding standards). It likewise has non-exclusive enforcement authority with respect to prohibited transactions. *See* 26 U.S.C. § 4975.

The Tax Code and ERISA contain a number of parallel provisions, and courts appropriately look to the Treasury Department's interpretation of the Tax Code for guidance on the proper interpretation of the corollary provision in ERISA. *See, e.g.*, *Cent. Laborers' Pension Fund v. Heinz*, 541 U.S. 739, 746 (2004) (reasoning that an IRS interpretation of the Tax Code sheds light on the meaning of a parallel ERISA provision). In particular, Ochsner's Plan—like all tax-advantaged retirement plans—must comply with provisions in the Tax Code to ensure both the deductibility of employer contributions and the tax deferral of employer and pre-tax employee contributions and investment earnings. *See* 26 U.S.C. § 401.

One of those provisions is 26 U.S.C. § 401(a)(2), which lists the requirements for a trust to be treated as a "qualified" retirement plan—including that assets in the trust not be "used for, or diverted to, purposes other than for the exclusive benefit of" the employees and beneficiaries for whom the trust is established. ERISA has an analogous provision, 29 U.S.C. § 1104(a)(1)(A), that directs fiduciaries to act "solely in the interest of the participants and beneficiaries" and "for the exclusive purpose" of providing benefits to participants and defraying reasonable plan expenses. Whether conduct is consistent with the "exclusive benefit" language in § 401(a)(2) of the Tax Code is thus directly relevant to whether that same conduct is consistent with ERISA's analogous "exclusive purpose" provision. And critically,

it is § 1104(a)(1)(A) that provides the basis for Plaintiffs' claim for breach of the duty of loyalty. Opening Br. 7, 22-25.

**2. The Treasury Department has long provided that employers may use forfeitures to reduce employer contributions.**

For more than fifty years, Treasury Department regulations have expressly authorized using forfeitures to reduce employer contributions. Before ERISA's enactment, the Treasury Department promulgated a regulation *requiring* qualified pension plans (*i.e.*, defined-benefit plans) to expressly provide that forfeitures "be used as soon as possible to reduce the employer's contributions under the plan." 26 C.F.R. § 1.401-7(a). Under this regulation, forfeitures in fact could *not* "be applied to increase the benefits any employee would otherwise receive under the plan." *Id.*; *see also* Rev. Rul. 67-68, 1967-1 C.B. 86, 1967 WL 15409, at *1 (Jan. 1, 1967). The Treasury Department later invoked this provision when explaining that defined-contribution plans—like Ochsner's—could satisfy the Tax Code's § 401(a) qualification provisions where they provide that "forfeitures are to be used to reduce the employer contributions that would otherwise be required under the plan." Rev. Rul. 71-313, 1971-2 C.B. 203, 1971 WL 26693, at *1 (Jan. 1, 1971).[3] Critically, the

[3] The Revenue Ruling recognizes that employers *may* use forfeitures to reduce employer contributions without jeopardizing their tax qualification status. The Ruling thus fully supports Ochsner's argument here.

§ 401(a) qualification provisions include the "exclusive benefit" requirement that mirrors ERISA. *See supra* pp. 6-8.

Plaintiffs argue that the Treasury Department's statements merely show that "forfeitures *may* permissibly be used" to offset employer contributions. Opening Br. 43. That is the point: It is entirely permissible for plan sponsors to allocate forfeitures to employer contributions. Under Plaintiffs' approach, by contrast, a plan sponsor can allocate forfeitures to employer contributions *only* (1) if the plan requires the sponsor to do so or (2) in the exceedingly narrow situation where an employer is on the brink of financial collapse and about to default on its contribution obligations. Neither limitation is consistent with the Treasury Department's statements, which recognize that offsetting employer contributions is a generally available option. Moreover, the Treasury Department did not say merely that using forfeitures to offset employer contributions is permissible, but that this use could satisfy § 401(a) and its "exclusive benefit" requirement—analogous to the "exclusive purpose" language that Congress used to describe the duty of loyalty under ERISA. The Treasury Department's pronouncements thus confirm that employers can choose to apply forfeitures to employer contributions regardless of whether the employer is facing default.

Informal guidance from both DOL and the Treasury Department has only bolstered this understanding over the past fifty years, repeatedly making clear that

employers who sponsor defined-contribution plans may use forfeitures to reduce employer contributions. In 1979, after ERISA was enacted, DOL issued a set of opinions on a defined-contribution plan for which forfeitures were "applied to reduce future employer contributions." U.S. Dep't of Lab. Advisory Op. No. 79-56A, 1979 WL 7031, at *2 (Aug. 9, 1979). While addressing at length certain other aspects of the plan, DOL notably never suggested that the plan's use of forfeitures violated ERISA. *See id.*

The Treasury Department has been even more explicit. In 2010, the IRS explained to employers sponsoring defined-contribution plans that "forfeitures may be used to pay for a plan's administrative expenses and/or to reduce employer contributions." Dep't of the Treasury, Internal Revenue Serv., *Retirement News for Employers* 4-5, Publ'n 4278 (Spring 2010), https://bit.ly/3Tp0lh0 ("*Retirement News for Employers*").[4] It would entirely upend this understanding if this same conduct were suddenly held to violate ERISA.

### B. Congress has likewise consistently recognized that forfeitures may and will be used to reduce employer contributions.

The history of the Tax Code demonstrates that Congress holds the same understanding as the Treasury Department. In 1986, Congress amended 26 U.S.C. § 401(a)(8)—which prohibits using forfeitures to "increase the benefits any

---

[4] While this publication cites 26 C.F.R. § 1.401-7(a), which governs pension plans, it does so in the context of addressing defined-contribution plans.

employee would otherwise receive"—to clarify that this prohibition applies to defined-benefit plans. Pub. L. No. 99-514, § 1119(a), 100 Stat. 2085 (1986). In explaining the bill, however, the House Conference Report made clear that Congress understood existing law to *already* permit defined-contribution plans to use forfeitures to "reduce future employer contributions or to offset administrative expenses." H.R. Rep. No. 99-841, Vol. II at 442 (1986). As the Supreme Court has recognized, "when Congress revisits a statute giving rise to a longstanding administrative interpretation without pertinent change, the 'congressional failure to revise or repeal the agency's interpretation is persuasive evidence that the interpretation is the one intended by Congress.'" *Commodity Futures Trading Comm'n v. Schor*, 478 U.S. 833, 846 (1986) (citation omitted). That principle is particularly forceful where Congress did not simply *silently* fail to revise the administrative interpretation, but rather echoed it in describing then-existing law.

Most recently, the Treasury Department has proposed a regulation to "clarify that," as described in the House Conference Report, "forfeitures arising in *any* defined contribution plan … may be used for one or more of the following purposes, as specified in the plan: (1) to pay plan administrative expenses, (2) to reduce employer contributions under the plan, or (3) to increase benefits in other participants' accounts in accordance with plan terms." 88 Fed. Reg. 12282, 12283 (Feb. 27, 2023) (emphasis added) (citing the House Conference Report). The

purpose of this regulation was to confirm uses of forfeitures that would *not violate* the Tax Code's qualification provisions, including the ERISA-analogous "exclusive benefit" provision, 26 U.S.C. § 401(a)(2), which the Treasury Department referenced expressly. 88 Fed. Reg. at 12282.

**C. Plaintiffs' theory would flip longstanding practice on its head.**

The consistent understanding of Congress and the Treasury Department explicitly authorizes the very practice that Plaintiffs challenge. Accordingly, to accept Plaintiffs' theory that Ochsner violated ERISA by allocating forfeitures to employer contributions (in accordance with its Plan document) would require this Court to conclude that the Treasury Department (which is vested with co-regulatory and enforcement authority over ERISA-governed retirement plans) has explicitly and continuously authorized a practice that violates ERISA. It would also require the Court to construe the "exclusive purpose" requirement in ERISA's fiduciary-breach provision (29 U.S.C. § 1104(a)(1)(A)) to have a different scope than the analogous "exclusive benefit" requirement in the Tax Code (26 U.S.C. § 401(a)(2)).

But ERISA and the Tax Code are inextricably intertwined.[5] It makes no sense to create a gap between when assets in a trust are "used for … purposes other than for the exclusive benefit of" employees under the Tax Code and when fiduciaries

[5] Plaintiffs' argument also fails under ERISA § 514(d), because ERISA cannot be interpreted to modify the Treasury regulations. *See infra* pp. 15-18.

are acting "for the exclusive purpose" of providing benefits to participants under ERISA. If the Treasury Department has concluded that using forfeitures to reduce employer contributions is consistent with acting for "the exclusive benefit of" employees, then that same act should not run afoul of ERISA's analogous "exclusive purpose" provision.

In light of this historical context, it is unsurprising that the overwhelming majority of district courts tasked with resolving the recent wave of forfeiture actions have dismissed as implausible theories of ERISA liability very similar to those Plaintiffs advance here. *See, e.g.*, *Madrigal v. Kaiser Found. Health Plan, Inc.*, 2025 WL 1299002, at *4-7 (C.D. Cal. May 2, 2025) (explaining that the plaintiff's similar forfeiture theory "marks a significant departure from previously well-settled law"); *see also Hernandez v. AT&T Servs., Inc.*, 2025 WL 3208360, at *4 (C.D. Cal. Nov. 14, 2025), *appeal docketed*, No. 26-1314 (9th Cir. Mar. 5, 2026); *Polanco v. WPP Grp. USA, Inc.*, 2025 WL 3003060, at *3-9 (S.D.N.Y. Oct. 27, 2025), *appeal docketed*, No. 26-1379 (2d Cir. May 19, 2026). This Court should do the same.

## II. Plaintiffs' claims fail as a matter of law for two independent reasons.

For two separate reasons, Plaintiffs' claims fail as a matter of law out of the gate. First, Plaintiffs' theory runs smack into ERISA § 514(d), 29 U.S.C. § 1144(d), which provides that ERISA cannot be interpreted to modify or invalidate other existing federal law—here, the Treasury Department regulation authorizing

Ochsner's approach to forfeitures. Second, Plaintiffs' theory is implausible because nothing in ERISA requires plan participants to receive *more* than they were contractually promised when—as Plaintiffs acknowledge here—ERISA does not itself prohibit the use of forfeitures to offset employer contributions.

### A. Plaintiffs' claims fail under ERISA § 514(d) because the conduct Plaintiffs challenge is consistent with Treasury Regulations.

Under Plaintiffs' theory, Ochsner violated ERISA by doing precisely what the Treasury Department permits. In addition to making little sense historically, *see supra* pp. 6-12, Plaintiffs' theory cannot be reconciled with ERISA § 514(d), which states that "[n]othing" in ERISA "shall be construed to alter, amend, modify, invalidate, impair, or supersede any law of the United States … or any rule or regulation issued under any such law." 29 U.S.C. § 1144(d). This provision makes "'explicit that [ERISA] shall not be construed to invalidate or impair any federal regulation.'" *Martin v. Nat'l Bank of Alaska*, 828 F. Supp. 1427, 1433 (D. Alaska 1992) (quoting *First Nat'l Bank of Chi. v. Comptroller of Currency of U.S.*, 956 F.2d 1360, 1368 (7th Cir. 1992)). Therefore, "[t]here can be no violation of ERISA" if a plan "compl[ies] with a valid regulation." *First Nat'l Bank of Chi.*, 956 F.2d at 1368.

Courts have repeatedly applied this principle to reject alleged ERISA violations. In *First National Bank of Chicago*, for example, the Seventh Circuit held that a defendant could not violate ERISA by complying with a regulation promulgated by the Office of the Comptroller of the Currency. *Id.* (citing 29 U.S.C.

§ 1144(d)). Likewise, while ERISA's anti-inurement rule might be interpreted to prohibit the return of contributions to a debtor's estate in certain circumstances, bankruptcy courts have nevertheless held that they can authorize such a return so long as the Bankruptcy Code permits it. *See In re Pulaski Highway Express, Inc.*, 41 B.R. 305, 309 (Bankr. M.D. Tenn. 1984) (rejecting the argument that ERISA's anti-inurement rule "is an exception to the unambiguous language of" § 1144(d)). As one court explained in rejecting an anti-inurement challenge, "[t]he language of § 1144(d) could be no clearer: *nothing* in ERISA should be interpreted to impact other federal law." *Id.*

DOL has also repeatedly invoked § 514(d) when interpreting ERISA. For example, DOL has advised that, "pursuant to ERISA section 514(d)," plan trustees that comply with a section of the Tax Code concerning tax levies are "not … in violation of ERISA sections 403(c)(1) and 404(a)(1)." U.S. Dep't of Lab. Advisory Op. No. 79-90A, 1979 WL 7027, at *3 (Dec. 28, 1979). Section 404(a)(1) is, of course, ERISA's fiduciary-breach provision—the same one Plaintiffs invoke here. *See* 29 U.S.C. § 1104(a)(1).[6]

DOL has taken a similar approach with respect to the intersection of ERISA and the Securities Exchange Act of 1934. The Securities Exchange Act permits, but does not require, a variety of investment-related conduct. Specifically, it allows

---

[6] For a helpful ERISA/U.S. Code cross-reference guide, see https://bit.ly/4eubbf4.

trustees or managers who exercise discretion with respect to an account (and are therefore fiduciaries with respect to that account) to enter into "soft dollar" arrangements through which they purchase goods or services with a portion of the brokerage commission paid for executing a transaction. *See* 15 U.S.C. § 78bb(e). While these arrangements are hypothetically susceptible to challenge under ERISA's anti-inurement and prohibited-transaction provisions, DOL has explained that these arrangements comply with ERISA if they comply with the Securities Exchange Act. *See* ERISA Technical Release No. 86-1 at 3-4 (1986), http://bit.ly/3GhiVER.

Applying these principles here, § 514(d) protects Ochsner's treatment of forfeitures. Forfeitures of non-vested employer contributions are governed by the Tax Code, in addition to ERISA. *See generally* 26 U.S.C. § 411; *see supra* pp. 6-8. As discussed above, a Treasury Department regulation governing defined-benefit pension plans states that forfeitures "must be used as soon as possible to reduce the employer's contributions under the plan." 26 C.F.R. § 1.401-7(a); *see supra* pp. 8-9. Plaintiffs' forfeiture theory—which is in no way cabined to defined-contribution plans—would abrogate this regulation by tying employers' hands and requiring them to use forfeitures to offset plan expenses. Moreover, the Treasury Department has consistently applied 26 C.F.R. § 1.401-7(a) to defined-contribution plans. *See supra* pp. 8-11. Plaintiffs' theory would therefore contravene the regulatory authority

allowing forfeitures to be used to decrease employer contributions, in direct violation of § 514(d). *See First Nat'l Bank of Chi.*, 956 F.2d at 1368. In short, the fundamental inconsistency between Treasury Department regulations and Plaintiffs' theory renders Plaintiffs' theory not just implausible but unlawful under § 514(d).

### B. Plaintiffs' claims are implausible under ERISA.

Plaintiffs' theory is infirm for a separate reason. At bottom, Plaintiffs' complaint is that Ochsner should have been required to contribute *more* to the Plan, and that plan participants should have been required to pay *less* in administrative expenses. But nothing in "ERISA mandate[s] what kind of benefits employers must provide if they choose" to sponsor a benefit plan. *Lockheed Corp. v. Spink*, 517 U.S. 882, 887 (1996); *see also Bennett v. Conrail Matched Sav. Plan Admin. Comm.*, 168 F.3d 671, 677 (3d Cir. 1999) ("ERISA does not confer substantive rights on employees; rather it ensures that they will receive those benefits that the employers have guaranteed to them."). Plaintiffs' argument cannot be squared with this bedrock principle. Plaintiffs' approach effectively mandates that forfeitures first be used to reduce plan expenses.[7] That mandate would override the terms of the Plan

[7] While this *amicus* brief focuses on Plaintiffs' fiduciary-breach claims, the district court also properly dismissed Plaintiffs' prohibited-transaction claim. *See* ROA.1787-89.

and compel Ochsner to provide an "additional benefit to participants not contemplated in the plans." ROA.1781.[8]

**1. ERISA does not require plan sponsors to provide any particular level of benefits.**

ERISA does not require employers to offer a retirement plan, let alone to maximize pecuniary benefits for any plan they do offer. *See Wright v. Or. Metallurgical Corp.*, 360 F.3d 1090, 1100 (9th Cir. 2004) ("ERISA 'does not create an exclusive duty to maximize pecuniary benefits.'") (citation omitted); *Foltz v. U.S. News & World Rep., Inc.*, 865 F.2d 364, 373 (D.C. Cir. 1989) (same). Rather, employers "are generally free under ERISA, for any reason at any time, to adopt, modify, or terminate" employee benefit plans. *Lockheed*, 517 U.S. at 890 (citation omitted). As a result, employees cannot use fiduciary liability to force an employer "to contribute more to the Plan than it" did. *Loomis v. Exelon Corp.*, 658 F.3d 667, 671 (7th Cir. 2011), *abrogated on other grounds as recognized in Hughes v. Nw. Univ.*, 63 F.4th 615, 624 (7th Cir. 2023). In other words, employers cannot be held liable under ERISA because they did not make a retirement plan "more valuable to

[8] Plaintiffs analogize to suits for excessive recordkeeping fees to argue that use of forfeitures to pay plan expenses is not an "additional" benefit. Opening Br. 35, 39. But Plaintiffs do not allege that the plan expenses were too high—they merely want someone else to pay them, something that the Plan does not (and need not) guarantee. *See* ROA.1789 n.35.

participants." *Id.* "When deciding how much to contribute to a plan, employers may act in their own interests." *Id.*

Critically, these principles do not immunize an employer from liability for failing to provide employees with the benefits they have been promised. Once an employer has decided to sponsor a plan, employees can "rel[y] on the face of written plan documents" to "protect contractually defined benefits." *US Airways, Inc. v. McCutchen*, 569 U.S. 88, 100-01 (2013) (identifying "ERISA's principal function" as the "protect[ion]" of contractual benefits) (citations omitted). But where a plaintiff objects to the level of benefits received, his basis for liability must derive from the plan documents rather than general theories of fiduciary liability. *See Bennett*, 168 F.3d at 677 ("ERISA does no more than protect the benefits which are due to an employee under a plan").

Applying these principles here, Plaintiffs' claim has no legal basis. Plaintiffs do not—and could not—argue that Ochsner violated the Plan when it used forfeitures to reduce employer contributions. *See* Opening Br. 9-10. And Plaintiffs disclaim any argument that ERISA categorically prohibits the use of forfeitures to offset employer contributions. Opening Br. 12, 18, 42, 45. Rather, Plaintiffs' theory is that, even though Ochsner *could* use forfeitures to offset contributions under the Plan, and even though Ochsner informed Plan participants of precisely that, ERISA nevertheless precluded Ochsner from doing so here. In other words, despite having

a menu of options for the use of forfeitures, Ochsner violated ERISA by selecting one of those options.

This theory is "a non-starter." *Loomis*, 658 F.3d at 671. Whether forfeited contributions are used to reduce employer contributions or to pay plan expenses is a decision regarding how much an employer is obligated to contribute and how much employees owe in expenses—and those decisions cannot give rise to liability under ERISA. Plaintiffs would presumably agree that they could not raise a cognizable claim that Ochsner violated its fiduciary duty by declining to lower participants' plan expenses, but their current theory seeks to accomplish precisely that: namely, an increase in the amount of administrative expenses paid by the employer (vis-à-vis forfeited employer contributions), rather than by plan participants. Similarly, Plaintiffs would presumably agree that they could not raise a cognizable claim that Ochsner violated its fiduciary duty by declining to make, on a discretionary basis, employer contributions that are not promised by the terms of the Plan—but, again, their current theory seeks to accomplish precisely that. Plaintiffs should not be able to use forfeitures to accomplish indirectly what they could not accomplish directly. *See Loomis*, 658 F.3d at 671 (rejecting a theory that would require the plan sponsor "to contribute more to the Plan than it does").

Notably, DOL agrees. DOL recently made clear that an employer's "deci[sion] to use Plan forfeitures to fund matching contribution benefits" does not

state a plausible claim for breach when permitted by the plan documents. Br. for the U.S. Sec'y of Lab. as *Amicus Curiae* Supporting Defendant-Appellee at 15, *Hutchins v. HP Inc.*, No. 25-826 (9th Cir. July 9, 2025), ECF No. 24.[9] As DOL's brief explains, "it is axiomatic that 'ERISA does no more than protect the benefits which are due to an employee under a plan.'" *Id.* at 17 (quoting *Wright*, 360 F.3d at 1100). Thus, where a plaintiff has "no allegation" that he received "less than the full contribution promised to him by [the employer] under the Plan," the plaintiff has failed to state a claim for breach of fiduciary duty. *Id.* at 17-18.

**2. Plaintiffs' approach to the Plan document undermines their own position.**

Plaintiffs suggest that this would be a different case if the Plan had directed Ochsner to use forfeitures *only* to offset employer contributions. As they acknowledge, "Ochsner, as settlor, could have drafted the Plan to require that forfeitures always reduce employer contributions first." Opening Br. 34-35. But, Plaintiffs contend, because Ochsner included in the Plan a menu of options for reallocating forfeitures, fiduciary duties dictated its choice. In other words, Ochsner could have treated forfeitures in *precisely the same way* if it had simply tweaked the

---

[9] DOL has made similar arguments supporting the use of forfeitures to offset employer contributions in defined contribution plans in four other cases. *See* Response Br. 31-32.

Plan document to eliminate flexibility—but, once it provided *options* for allocating forfeitures, it was limited to one option. This argument is off base.

To start, this argument suggests that the problem Plaintiffs identify is not about the exercise of any *actual* fiduciary discretion but a quibble with how the Plan was written—*i.e.*, that a change in one sentence could somehow flip the switch on fiduciary liability. But the writing of the plan document is indisputably a *settlor* function, not a fiduciary one. *See Lockheed*, 517 U.S. at 890 (employers "are analogous to the settlors of a trust" when they act to "adopt, modify, or terminate" employee benefit plans) (citation omitted). Indeed, the whole purpose of the settlor-fiduciary distinction is that an employer is *not* subject to fiduciary liability for plan-design decisions if it adheres to the contractual benefits it promised to participants. *See Hughes Aircraft Co. v. Jacobson*, 525 U.S. 432, 444 (1999) ("ERISA's fiduciary duty requirement simply is not implicated where [an employer], acting as the Plan's settlor, makes a decision regarding the form or structure of the Plan …."). It would eviscerate the settlor function if an employer could nonetheless be sued for following the terms of the plan it put into place.

Moreover, Plaintiffs' argument is premised on the notion that the plan document, if written differently, could have displaced ERISA's fiduciary obligations—*i.e.*, that the fiduciary obligation to use forfeitures to pay administrative expenses applies only where the plan does not provide otherwise. But that is

completely contrary to the position consistently being taken in many contexts by ERISA plaintiffs, who frequently point to the directive in 29 U.S.C. § 1104(a)(1)(D) that fiduciaries must discharge their fiduciary obligations "in accordance with" the plan document "insofar as" the plan document is "consistent with the provisions of this subchapter."

Indeed, Plaintiffs recognize this principle. Opening Br. 33. If ERISA's fiduciary obligations require funds to be used to increase participant benefits, then under Plaintiffs' theory ERISA would *also* require plan fiduciaries to disregard the plan document and *always* use forfeitures to pay administrative expenses. Accordingly, it makes no sense to suggest, as Plaintiffs now attempt to do, that Ochsner has a fiduciary obligation to use forfeitures in a particular way, *but* a plan sponsor can effectively override that obligation by writing the plan document slightly differently.

Notably, there are many sound reasons *why* plan documents provide choices about how to use forfeitures—and none that suggest it is a *fiduciary* determination whether to use forfeitures to pay plan expenses. For one thing, retirement plans governed by the Tax Code (which most retirement plans are, *see supra* pp. 6-8) have long understood that they are not permitted to keep unallocated forfeitures sitting in plans; instead, the Treasury Department instructs plans to use or allocate forfeitures "in the plan year incurred," or else they can lose their "qualified" status (*i.e.*, their

eligibility for significant tax benefits). *Retirement News for Employers* 4; *see also* Rev. Rul. 80-155, 1980-1 C.B. 84, 1980 WL 130029, at *1 (June 16, 1980). At the same time, how to use forfeitures can vary significantly from year to year in ways that cannot be predicted *ex ante* when plan documents are drafted. Depending on, for example, how many employees leave in a given year before their benefits vest, when forfeitures arise, and the amount of plan expenses, it may make more or less sense to use forfeitures to fund plan expenses over employer contributions or vice versa.

Under Plaintiffs' approach, however, a plan sponsor can use forfeitures to fund employer contributions *only* if it eliminates the option to use forfeitures to fund administrative expenses. *See* Opening Br. 34-35 (acknowledging this aspect of Plaintiffs' theory). Thus, before each plan year begins, a sponsor would have to tie itself to a particular approach that might in fact make little sense based on the actual experience during that particular year.

For another thing, a plan document providing a choice between using forfeitures to reduce employer contributions *or* to pay plan expenses is not inherently a choice between one option benefitting the employer and another benefitting the employee—contrary to Plaintiffs' assumption, Opening Br. 9-10. Even in defined-contribution plans in which participants pay recordkeeping expenses, there are *many* plan expenses often paid by the plan sponsor—including the costs of an independent

auditor, legal counsel, and more. Accordingly, a choice about whether to use forfeitures to pay plan expenses or reduce employer contributions need not have *anything* to do with reducing participant costs at all. Rather, an employer selecting between using forfeitures either to offset remaining contributions or to pay plan administrative expenses might simply be choosing between two different options that each offset the *employer's* expenses—suggesting, again, that treatment of forfeitures consistent with the plan documents should not give rise to a claim for breach of fiduciary duties.

## III. Plaintiffs' claims, if accepted, will undermine ERISA's text and purpose and harm plan participants.

### A. Plaintiffs' approach cannot be squared with Congress's objectives in enacting ERISA.

Plaintiffs repeatedly trumpet ERISA's fiduciary provisions as directing a ruling in their favor. But allocating forfeitures to participant accounts—*i.e.*, using forfeitures *to provide contributions* for participants who remain in the plan—is fully consonant with those obligations, including with the concept of acting "solely in the interest of the participants." *Cf. Hughes Aircraft*, 525 U.S. at 442 (ERISA's "exclusive purpose" language "focuses exclusively on whether fund assets were used to pay pension benefits to plan participants"); *Raymond B. Yates, M.D., P.C. Profit Sharing Plan v. Hendon*, 541 U.S. 1, 22 (2004) ("The [anti-inurement]

provision demands only that plan assets be held for supplying benefits to plan participants.”).

Moreover, Plaintiffs’ theory undercuts the flexibility Congress afforded plan sponsors who offer retirement plans. As discussed above, ERISA does not impose any obligation on employers to offer a particular level of benefits, or even to offer benefits at all. *See Lockheed*, 517 U.S. at 887. Thus, an employee’s entitlement to benefits is a “contractually defined” right that is protected by the “written plan documents.” *US Airways*, 569 U.S. at 100-101 (citations omitted). Plaintiffs’ theory here, however, is that even if plan participants get every benefit and every penny they are promised by the plan documents, ERISA’s fiduciary provisions require plans to be administered in a way that would entitle participants to *more* benefits than they have been promised—here, free or highly subsidized administrative expenses. That is completely inconsistent with Congress’s objective.

**B. Plaintiffs’ theory harms both employers and employees.**

Interpreting ERISA to give rise to fiduciary obligations that Congress and regulators have *never* understood to exist would disrupt the settled expectations of plan sponsors. It would impose “gotcha” liability on plan sponsors who simply incorporated Treasury regulations into their plan documents—approximately 100 of

whom have been sued thus far[10]—simply because they did not use whatever magic words Plaintiffs suggest could have enabled them to avoid a lawsuit. As the Supreme Court has explained, though, when enacting ERISA Congress knew that if it adopted a system that was too inflexible or "complex," then "administrative costs, or litigation expenses, [would] unduly discourage employers from offering … benefit plans in the first place." *Varity Corp. v. Howe*, 516 U.S. 489, 497 (1996). Plaintiffs' theory would have precisely that effect.

Plaintiffs' theory will not redound to the benefit of employees, either. According to Plaintiffs' theory, so long as an employer writes its plan document to dictate that forfeitures must be used to offset employer contributions, then there is no requirement they be used to offset administrative expenses. The result? A decision in Plaintiffs' favor would result in no change in plan behavior—employers would simply tweak the language of their plan documents to remove the flexibility that the Treasury Department has permitted for decades, and the same flexibility that helps employers most effectively use forfeited contributions. *See supra* pp. 24-25. Worse yet, with no assurance that forfeited contributions could be used as specified in the plan document without giving rise to liability for a potential fiduciary breach (or, at minimum, to an expensive and time-consuming lawsuit), Plaintiffs' theory

---

[10] *See* Jacklyn Wille, *ERISA Class Actions Soar in 2026 as New Legal Theories Emerge*, Bloomberg Law (Apr. 13, 2026), https://bit.ly/4uZLafi.

could discourage employers from offering “match” contributions as retention incentives.

* * *

Plaintiffs’ theory has nothing to recommend it. It will not result in any meaningful benefit to employees, and it is inconsistent with ERISA, historical practice, and employers’ settled expectations. The Court should reject this novel approach.

## CONCLUSION

The judgment of the district court should be affirmed.

October 16, 2026

Respectfully submitted,

/s/ Jordan Bock
Jordan Bock (Mass. Bar No. 708171)
James O. Fleckner
Lee J. Moore
GOODWIN PROCTER LLP
100 Northern Avenue
Boston, MA 02210
(617) 570-1000
jbock@goodwinlaw.com

*Counsel for Amici Curiae*

Janet Galeria
Mariel A. Brookins
U.S. CHAMBER LITIGATION CENTER
1615 H Street, NW
Washington, DC 20062

*Counsel for the Chamber of Commerce of the United States of America*

**CERTIFICATE OF SERVICE**

I hereby certify that on October 16, 2026, I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Fifth Circuit using the Court's CM/ECF system. Counsel for all parties to the case are registered CM/ECF users and will be served by the CM/ECF system.

Dated: October 16, 2026

*<u>/s/ Jordan Bock</u>*
Jordan Bock

## CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limitations of Federal Rule of Appellate Procedure 29(a)(5) because it contains 6,471 words, excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 32(f).

This brief complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type-style requirements of Federal Rule of Appellate Procedure 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word 365 in 14-point Times New Roman font.

Dated: October 16, 2026

*/s/ Jordan Bock*
Jordan Bock